STATE of Missouri, Respondent,

v.

Hayes W. LOWE, Appellant.

No. KCD 29840.

Missouri Court of Appeals,
Kansas City District.

Nov. 27, 1978.

Thomas J. Briegel, Briegel & Kimme, Union, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., SWOFFORD, C. J., and WASSERSTROM, J.

SHANGLER, Presiding Judge.

The defendant Hayes Lowe was convicted of the unlawful possession of more than thirty-five grams of the controlled substance marihuana and was sentenced to a term of imprisonment for three years.

The marihuana was seized from premises Lowe and his wife shared as the marital residence but from which he was absent because of a domestic tiff. The defendant contends that the evidence was not sufficient to prove possession of the marihuana in him so that the conviction may not stand.

The marihuana was taken by the police under the execution of a search warrant for the substance on premises described as an apartment on the east side of the second story of the building at 711 West Main Street in Jefferson City, Missouri. The warrant was issued by the county magistrate some minutes earlier and was executed at about 1:55 a. m. by forcible entry after the front door was not opened to the announced presence of the officers. Other officers made entry through the rear entrance. The wife of defendant, Brenda Lowe, was found on the premises alone in full dress. An immediate search disclosed two plastic bags of marihuana in a handbag suspended on the bedroom doorknob. The wife was promptly placed in arrest and removed from the premises. A subsequent more detailed search disclosed some of the substance within a plastic cigar box aside a chair and some loose marihuana in a metal pan under that chair in the living room. In a bare back room [referred in the evidence as the back bedroom] was a stalk of marihuana with leaves intact leaning against a radiator. The stalk was so situated that when the door to the room was open the plant was concealed from view. In that same back bedroom was found a closed valise on the floor which contained marihuana. In the kitchen were three potted marihuana plants on the windowsill.

Later that day, June 25, 1977, the defendant Lowe was taken into custody, warned of his rights, and then interrogated. The defendant responded that he and his wife had resided in the premises searched for about a year, but that he was last there on Friday, the 24th of June. The officer then asked Lowe "if he knew anything about the presence of marijuana in the apartment and he said, 'No.'" The defendant went on to say without further inquiry [according to the discursive account of Officer Tedeschi]: "that, sure, he had smoked marijuana, you know, and didn't see any big deal. And at the same time he said he didn't want to answer any more questions." On cross-examination Officer Tedeschi acknowledged that during the interview he did not ask Lowe whether, when he visited the residence building on the 24th of June, the defendant actually went into the house.

The defendant was then formally charged with the unlawful possession of more than 35 grams of marihuana. [The quantity seized from the search was actually 115.7 grams.] The wife, Brenda, was charged with possession of under 35 grams of the substance [presumably on the basis of the marihuana found in her purse] but, according to her testimony, was eventually dismissed from the charge altogether.

The evidence for the defense came from Brenda Lowe and one Haldiman. It was the testimony of Haldiman that defendant Lowe had spent the five days with him from Monday until Saturday, June 25th [the day of the search and his arrest] where they lived together at his home in rural Hartsburg. Haldiman had known Lowe for a number of months and came to the apartment that Monday to enlist his help to move a double trailer. When he arrived, he made his presence known by the sound of the horn on his car, but heard Lowe and his wife in argument and so did not go into the apartment premises. Haldiman and Lowe left together and during that week, until Saturday, worked and lived together. Lowe was without means of transportation so they returned to the Lowe apartment on Friday, the 24th of June, at about eleven a. m. to pick up his motorcycle. They did not enter the apartment because the door was locked and Lowe was without a key. They returned directly to Hartsburg; Lowe on his motorcycle, Haldiman in his pickup truck.

The wife, Brenda, testified that at the time the police entered the apartment under the search warrant she was alone. She had separated from her husband and had been apart since the prior Monday. He left with some of his clothes and had not returned during that time. The marihuana the officers discovered on the premises all belonged to her and none to her husband. During the two weeks before they separated they spatted so that Lowe was at the apartment only intermittently. She concealed the marihuana from her husband during the times when he came. She kept the doors locked and only she had a key to the premises. The wife acknowledged that she made no effort to conceal the marihuana stalk from her husband but explained that the plant was in an off-room. According to her testimony, the stalk had been on the premises for a week before discovery by the police, the plants on the kitchen sill for only a few days before, the cigar box with the marihuana in the living room for not "very long," the valise in the off-room for "the past couple of weeks" and the pan under the living room chair had been plenished with marihuana the very day of the police search. At the time the testimony was given, Brenda had reunited with her husband.

■ The charge of unlawful possession of a controlled substance [in this case, marihuana] under Chapter 195, RSMo 1969, requires proof that the accused had conscious possession of the substance. *State v. Burns*, 457 S.W.2d 721, 725[3, 4] (Mo.1970). For the penal purposes of these statutes actual possession need not be shown but proof of constructive possession will suffice. *State v. Worley*, 375 S.W.2d 44, 47[4, 5] (Mo.1964). The possession which the narcotics law prohibits, therefore, is not proprietary only but also such an exercise of control over drugs not in physical possession as will give rise to an inference of possession. In either case, the possession need not be exclusive but may be shared and is culpable only where the accused knew of the contraband and had control of the substance. *State v. Norris*, 460 S.W.2d 672, 677[5, 6] (Mo.banc 1970); *State v. Berry*, 488 S.W.2d 667, 668[1–4] (Mo.App.1972).

■ In a case where an accused is in exclusive control of premises the law makes the inference that a contraband substance found there also rests within his possession and control. *State v. Wiley*, 522 S.W.2d 281, 292[20, 21] (Mo.banc 1975). This rule rests on the logic that no one other than the exclusive proprietor could control—and so account for—the drugs. *State v. Funk*, 490 S.W.2d 354, 360[8] (Mo.App.1973). In a case where premises are shared, a like inference of possession of the contraband does not arise in the absence of additional circumstances to inculpate the accused. *State v. McGee*, 473 S.W.2d 686, 687 (Mo.1971); *State v. Berry, supra*, l. c. 668[1–4]. This rule rests on the logic that a shared proprietary interest in premises does not render it more likely that an accused either knows of the presence of drugs on the premises or in fact exercises control over the substances. *State v. McGee, supra*, l. c. 687; *State v. Funk, supra*, l. c. 361; Whitebread and Ste-

vens, Constructive Possession In Narcotics Cases: To Have and Have Not, 58 Va.L. Rev. 751, 763 (May, 1972).

■ Nor does the status of husband and wife between the defendant and Brenda found alone on shared premises amidst the marihuana give rise to a presumption that the husband had control of the substance. Those jurisdictions which continue to deem the possession of contraband by the wife that of the husband as head of the household on premises shared by them [1] cling to the common law unity of persons of a husband and wife, a fiction the emergent status of women and contemporary mores no longer allow. The more correct analysis sees no distinction between spouses and other cotenants of premises but directs inquiry only to whether or not the accused was in a position to exercise control over the drugs found on the premises. *Grantello v. United States*, 3 F.2d 117 (8th Cir. 1924); *Puckett v. State*, 13 Md.App. 584, 284 A.2d 252 (1971); *Commonwealth v. Hannan*, 229 Pa. Super. 540, 331 A.2d 503 (1974); *United States v. DiNovo*, 523 F.2d 197 (7th Cir. 1975); *Mills v. State*, 325 N.E.2d 472 (Ind. App.1975); *Barnhart v. State*, 559 P.2d 451 (Okl.Cr.1977); Annotation: Illicit Drugs— Nonexclusive Possession, 56 A.L.R.3d 948 §§ 2a and 3. See also *State v. Funk, supra*, l. c. 363[9].

In terms of our decisional law, therefore, the question posed on appeal is whether the evidence shows a circumstance, in addition to the joint control of the apartment premises shared with wife Brenda, which renders it more probable than not that the defendant possessed the drugs taken under warrant.

The prosecution contends that seven incidences of evidence prove that the defendant had conscious, albeit constructive, possession and control of the drugs taken by the police: (1) defendant and wife Brenda lived for one year on the premises where the contraband was found; (2) defendant visited the premises the day before the seizure of the marihuana and of his arrest; (3) 115.7 grams of the substance were found throughout the apartment on the next day; (4) some of the marihuana was on the apartment premises for more than the week defendant was continuously absent from those premises; (5) testimony by wife Brenda [so it is asserted] that defendant knew of the presence of the marihuana stalk with leaves intact in the rear room; (6) defendant remained absent from the premises extendedly only for the five days prior to his arrest; and (7) defendant admitted to the officer that he had smoked marihuana and "didn't see any big deal" about it.

Item (1): We have shown that the law does not, without more, infer control by a cotenant of drugs found on shared premises. *State v. McGee, supra*, l. c. 687. Nor does the Missouri [and other considered] law, on the rationale of *McGee* and *Funk*, impute to the husband the admitted possession of contraband by the wife on premises shared by them. That is because possession is the very gist of such a criminal offense [*State v. Young*, 427 S.W.2d 510, 513[2–6] (Mo.1968)] and so, by definition, only the possessor can commit the crime. *Commonwealth v. Hannan, supra*, 331 A.2d l. c. 505[3]. To find guilt on the fictive assumption that a husband so dominates the conduct of the wife as to be blamed for her crimes committed on family premises subverts the sense of the statute and tenet of criminal responsibility that culpable possession means conscious possession. LaFave & Scott, Criminal Law p. 182 (1972).

Item (2): The defendant answered the interrogation of Officer Tedeschi that he had last been to the marital premises on

---

1. The principle is stated succinctly in Wharton's Criminal Evidence, § 116 (13th edition): "When the defendant and his wife are in joint occupancy and possession of premises, there is a presumption that the defendant, as head of the household, had possession or control of narcotics . . . found therein." This rationale has been followed, without explanation or analysis, in *Landers v. State*, 114 Ga.App. 687, 152 S.E.2d 431 (1966); *Quick v. State*, 191 Miss. 179, 2 So.2d 812 (1941); *Martinez v. State*, 539 S.W.2d 885 (Tex.Cr.App.1976). One jurisdiction, *State v. Baxter*, 285 N.C. 735, 208 S.E.2d 696 (1974), continues the presumption even when the husband is "temporarily absent" from the premises where his wife was found.

Friday, the day before the search under the warrant. From this the prosecution finds that inculpatory circumstance—in addition to joint possession of premises itself—from which the knowledge of the presence of the marihuana in the apartment and, we assume, an inference of control of the substance requisite to prima facie possession. The full testimony of Tedeschi was, however, that the defendant stated to him that he had gone to the premises—not that he had entered the apartment or even the building. The testimony of the defense witness Haldiman was that he accompanied defendant to retrieve a motorcycle from the apartment building but that Lowe was unable to enter the apartment itself because it was locked and he was without a key. The wife corroborated that the apartment was locked even when she was there and that she kept the only key. This evidence taken most favorably to the State allows no inference of knowledge by the defendant of the contents of the apartment during the week, more or less, when he was absent altogether from the interior premises.

Item (3): The discovery of the 115.7 grams quantity of marihuana found throughout the apartment on the day after defendant attempted entrance onto the premises, and in his absence, corroborates neither knowledge of the presence of the drug nor constitutes that proof of dominion over the substance the law equates with constructive possession of contraband.

Item (4): There was evidence by wife Brenda that some of the marihuana had been on the domestic premises for more than the week she and her husband had been separated. The stalk and the valise, she testified, had been in the back bedroom for about a week. This means, of course, that the defendant was on the apartment premises at the same time these quantities of marihuana were there. The evidence also was, however that for the two weeks before their separation [and, hence, during the time the stalk and marihuana in the valise were on the premises] the husband and wife were in a state of contention so that his stay on the premises was only intermittent. The argument by the State

on this evidence suggests that, even without more specific proof, a reasonable mind will infer that the defendant came to the knowledge of the presence of the stalk and contents of the valise from these visits and that such knowledge of the presence of the drug on premises jointly shared makes probable his control—and hence constructive possession—of the substance.

This evidence allows neither inference of knowledge by the defendant of the presence of the drug nor of his constructive possession of the substance. It is quite beyond dispute that the stalk was so placed in the otherwise empty rear bedroom so as to be cut off from view when the door was open—as certainly it must have been concealed from view when the door was shut. It is also quite clear that the valise in that same room was kept closed. That means that unless the defendant already knew of the presence of the substance in that room the open door would not have disclosed it. There is no evidence that the defendant ever went into the back room—nor, for that matter, any other room—on his intermittent visits during the two weeks before separation. The testimony of Officer Tedeschi shows that entry into the apartment from the front door led to the living room from which the bare back bedroom was quite removed. Entry into the apartment from the rear door led to the kitchen and bathroom. The meager evidence allows no basis to assume that the momentary visits by the defendant took him to the one room which contained the marihuana. All the more so, when considered with the testimony of wife Brenda that she purchased the marihuana for her own use and concealed its presence from her husband during the two-week estrangement.

█ The inference of constructive possession the State makes for this evidence reverts to a principle of property law: that ownership entails possession—so that the owner of a house "possesses" all the contents. 58 Va.L.Rev. 751, 763, *supra*. The *possession* meant by the statute, however, is not of this order but means some circum-

stance of inculpation, other than mere joint possession of premises, which proves knowledge by the accused of the presence of the marihuana on his premises and his control over the substance.[2] *State v. McGee, supra,* l. c. 687; *State v. Funk, supra,* l. c. 363[10]; *People v. Antista,* 129 Cal.App.2d 47, 276 P.2d 177, 179[2–5] (1954); see, also, *State v. Berry, supra,* l. c. 668[1–4]. The evidence of the conduct of the defendant on the premises during the two weeks prior to his separation, taken most favorably to the State, does not allow inference of his knowledge of the presence of the marihuana in the back room. Guilty knowledge may not be presumed but must be proved as an element essential to conviction for unlawful possession. *State v. Burns, supra,* l. c. 625; *State v. Wiley, supra,* l. c. 292[22–25].

Item (5): The prosecution contends also that in testimony for the defense wife Brenda acknowledged her husband knew of the marihuana stalk in the rear room of the apartment and so that the knowledge of presence element of unlawful possession was proved. This assertion rests on the [emphasized] trial colloquy between the prosecutor and witness Brenda:

Q. Brenda, did you . . . purchase the marijuana that was found in there [the cigar box found in the living room]?

A. Yes.

Q. Did you purchase the marijuana that was found in the pan underneath the chair in the same room?

A. (Nodded head.)

Q. Did you purchase the marijuana that was found in the suitcase?

A. (Nodded head.)

Q. And it is your testimony that Hayes had no knowledge of any of it?

A. No, he didn't.

Q. *Did you purchase the marijuana stalk that was lying on the radiator?*

A. *Yes.*

Q. *Now, did Hayes Lowe have any knowledge of that?*

A. (*Nodded head.*)

Q. All right. Now, it is not your testimony that he was not living there prior to your starting to have—when he moved out on Monday, is it; I mean, he might have been here . . . .

A. I don't understand what you mean.

Q. Your testimony thus far has been, has it not, that at least for a few weeks before this incident you had marijuana in and out and in these places where we just talked about?

A. I didn't keep marijuana hidden around there when Hayes was living there; no, I didn't.

Q. You mean to tell me that during that two-week period, which you said Hayes was there the week before but not during the immediate week before this incident on the 24th or 26th of June, but the week before that he was there then, that was your testimony a minute ago.

A. He was there on and off. I didn't . . .

Q. All right. Did you conceal . . .

A. You are putting words in my mouth.

Q. Did you conceal the marijuana that was there when Hayes came in?

A. Yes, I did.

Q. All right. Did you have some reason to know that Hayes wouldn't be back on the night of the execution of the search warrant?

A. I had the doors locked, and I had the only key to get in.

The efficacy of the prosecution conclusion that the testimony by the wife proves knowledge by the defendant of the presence of the marihuana stalk on the premises derives solely from the answer: *Nodded*

---

**2.** The additional incrimination essential to convince a cotenant of possession of drugs found on the premises, according to generally accepted legal statement, derives from "evidence allowing an inference [of knowledge of the presence of the drugs and control over them] based on defendant's statements, admissions, conduct, or the situation." *State v. Rivers,* 554 S.W.2d 548, 551[5, 6] and cases cited in note 2 (Mo.App.1977); Annotation: Illicit Drugs—Nonexclusive Possession, 56 A.L.R.3d 948, 953.

*head* to the question whether her husband had knowledge of the purchase of the marihuana stalk "that was lying on the radiator." The gesture of the head, reported as a nod, if intended as an affirmation of the question, could only signify knowledge by the husband that the wife had purchased the stalk, and not of its presence on the apartment premises. In the context of the full testimony of wife Brenda that she purchased the marihuana for her own use, that the substance was not kept on the premises when the husband lived there and that she took care to conceal the presence of the drug from him during his intermittent visits while they were estranged, there was no reasonable basis to misunderstand the purport of the witness—that the defendant had no knowledge of the presence of the stalk or any other form of marihuana on the apartment premises.[3]

Item (6): The contention that the defendant remained absent from the premises for only five continuous days prior to his arrest merely recapitulates Item (4)—that some of the marihuana substance was in the apartment for longer than that period and so, presumably, noticed by the defendant and was part of his personal knowledge. That assertion has already been dispelled and does not require further comment.

Item (7): What remains is the contention that the statement by the defendant while in police custody that "he had smoked marihuana and 'didn't see any big deal' about it" was a circumstance to inculpate the defendant to the drugs found on the apartment premises in his absence. The cases which consider whether evidence that the accused was a user of narcotics at the time of arrest, of itself, is a circumstance sufficient to incriminate him to drugs found on shared premises so as to sustain a conviction for unlawful possession of the narcotics are collected in the annotation: Illicit Drugs—Nonexclusive Possession, 56 A.L.R.3d 948, § 8. These cases disclose, with some exception, that the admission of use, without other circumstance, [such as paraphernalia of possession for use (*People v. Valenzuela,* 174 Cal.App.2d 759, 345 P.2d 270 (1959))] and the admission that the accused had made recent purchases of quantities of narcotics and kept the key to the storeroom for drugs [*People v. Redrick,* 55 Cal.2d 282, 10 Cal.Rptr. 823, 359 P.2d 255 (1961)] does not suffice to prove guilt of a conscious possession of drugs found on premises shared by the accused with others.

The statement by defendant Lowe to the police, in any event, was only that "he *had* smoked marijuana" [our emphasis] not that he practiced a present use. Any such evidence bears on the criminal charge only to the extent that it tends to prove the defendant possessed the drugs taken from the apartment he shared with his wife. In the circumstance of marihuana present on those premises without his knowledge, a discarded [or even continued] use of that drug by the defendant does not imply the probability more than less that the defendant was in possession of the substance found there and

---

**3.** We restate the indispensible proof for possession of an unlawful substance—even when the accused is found on the premises where the drug is discovered [a circumstance not present here]:

"Where a person is present on premises where drugs are found but does not have exclusive *use or possession of the premises,* it may not be inferred that he had knowledge of the presence of the drugs or had control, so that no submissible case is made. Additional factors are required. Where the defendant is present on the premises and if there are additional independent factors showing his knowledge and control, then that is sufficient to withstand a motion for a directed verdict. *To justify a conviction in any case on a charge of possession it is necessary to prove that the accused knew of the presence of the forbidden substance and that the same was under his control.* In the absence of incriminating circumstances no case is made." [Emphasis added.] *State v. Wiley, supra,* l. c. 292[22–25].

Should we assume [what we plainly do not] that the testimony by the wife means the husband knew of the presence of the stalk on their premises, there remains lack of proof of circumstance altogether that the stalk—or any other marihuana—was under his control so as to make out a submission of unlawful possession. In any event, that portion of the stalk and leaves which yielded marihuana weighed substantially less than the excess of 35 grams the law proscribes as a felonious possession and for which the defendant was prosecuted.

taken by the police. Nor—if we assume the knowledge of the presence of the marihuana—does the evidence of a present use, without more, logically prove the constructive possession of the substance found on premises to which the defendant had limited access and which were not shown to have been on the premises during the time of his conjugal occupancy. *People v. Antista, supra,* 276 P.2d l. c. 181[9–11].

 In terms of legal theory, constructive possession is figurative actual possession. To convict for constructive possession of an unlawful substance, the knowledge of the presence of the drug and dominion over the substance requisite for conviction for actual possession in fact must be proved by evidence of equivalent effect. *State v. Wiley, supra,* l. c. 292[22–25]; *State v. Polk,* 529 S.W.2d 490, 492[2] (Mo.App.1975). In this proof, knowledge of the substance necessarily precedes possibility of control. *State v. Burns, supra,* l. c. 724[1, 2]. There was no evidence of the knowledge by the defendant of the marihuana on the shared premises—or, if we assume knowledge of the purchase and presence of the stalk—there was certainly no evidence of dominion over that substance.

The rule which requires that an inculpation in addition to joint use of premises be shown for a submissible issue of constructive possession shows judicial wariness that guilt on circumstantial evidence be imputed only on substantial proof. *State v. Berry, supra,* l. c. 668[1–2]; *United States v. Holland,* 144 U.S.App.D.C. 225, 227, 445 F.2d 701, 703[1] (1971). Thus, in *State v. McGee, supra,* l. c. 687 proximity to the substance by the accused on premises shared by him was not sufficient to convict for a constructive unlawful possession even when the drugs were in his presence; but physical possession of the drug receptacle was a sufficient additional circumstance of guilt [*State v. Scarlett,* 486 S.W.2d 409, 410 (Mo. 1972)], as was admitted ownership of the drugs taken [*State v. Lockhart,* 501 S.W.2d 163, 164[1] (Mo.1973)], and also where the drugs were taken from a safe in a room within the exclusive possession of the accused [*State v. McCracken,* 518 S.W.2d 229, 230 (Mo.App.1974)].

The case at bench resembles most nearly the facts in *Grantello v. United States, supra,* where the court held that possession by the wife of morphine on the marital premises from which the husband had been absent for six months was not sufficient to render his guilt of possession of the substance a jury issue. The evidence before us shows an admitted possession of the marihuana by wife Brenda—a possession, for all the record discloses, actual, exclusive and dominant. The rudiments of proof of the constructive possession of the drugs by the defendant husband were not made. Accordingly, the defendant is entitled not only to reversal of judgment but to discharge. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 2150[7], 57 L.Ed.2d 1 (1978).

The judgment is reversed and the defendant ordered discharged.

All concur.