**STATE of Missouri, Plaintiff–
Respondent,**

v.

**Barry W. CONDICT, Defendant–
Appellant.**

No. 21698.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 26, 1997.

Donald Rhodes, Bloomfield, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, for Respondent.

MONTGOMERY, Chief Judge.

Barry W. Condict (Defendant) appeals from his conviction in this court-tried case of attempting to manufacture methamphetamine in violation of § 195.211.[1] Defendant was sentenced to eight years' imprisonment. His sole point on appeal is that the evidence was insufficient to convict him of the offense charged. We agree.

■ Defendant was charged with the felony of attempting to manufacture methamphetamine, a controlled substance. The information further alleged "that on or about December 15, 1996 ... defendant possessed chemicals and drug paraphanalia [sic] used in the manufacture of methamphetamine, and such conduct was a substantial step toward the commission of the crime of manufacture of methamphetamine...." Defendant asserts that the State's evidence failed to show he was in actual or constructive possession of chemicals or drug paraphernalia used in the manufacture of methamphetamine.

---

1. Statutory references are to RSMo 1994 unless otherwise indicated.

■ The standard of review in a court-tried case "is the same as it is in a jury tried case and that is whether or not there was sufficient evidence from which the trier of fact could have reasonably found guilt." *State v. Pollard,* 941 S.W.2d 831, 833 (Mo. App.1997). "We accept as true all evidence tending to prove guilt together with all reasonable inferences that support the finding, and all contrary evidence and inferences are ignored." *Id.*

On Sunday, December 15, 1996, Dennis Fowler, a Stoddard County deputy sheriff, had a warrant for the arrest of Michael Jansen. Fowler also had information that Jansen might be found at Bolin's Garage, a salvage and used auto parts business near Puxico, Missouri. Acting on this information, Fowler arrived at Bolin's Garage around 11 a.m. He failed to locate Jansen after searching both the garage building and Mr. James Bolin's mobile home which is adjacent to the garage.

Mr. Bolin owned the premises containing the garage building and his mobile home. His adult son, Jiminey, lived in the mobile home with his father and managed the garage business.

Although the garage was not open for business on the Sunday in question, Jiminey testified that customers occasionally would come to the garage on evenings and weekends. He said customers are prone to just walk into the garage looking for him. Jiminey also testified that on one previous occasion Defendant had purchased a truck part at the garage.

Mr. Bolin testified that while he was fixing supper that Sunday evening, he heard a car pull up outside the mobile home. He looked out the window and saw his nephew, Michael Jansen, who said, "[I]t's me." Mr. Bolin replied, "[O]kay."

Fowler and other law enforcement officers returned to Bolin's Garage around 6 p.m. that same day, still looking for Jansen. Upon his arrival, Fowler parked behind a truck later identified as Defendant's. The truck motor was running. As Fowler approached the garage door, Jansen walked out and was placed under arrest. The officers discovered a holstered gun under Jansen's coat.

Fowler then went inside the garage door and saw two people, later identified as Defendant and Mark McClain, standing in the garage service area. This area is accessible to and used by garage customers. The garage door was unlocked. When Fowler saw McClain throw something into a nearby truck body, he ordered both men to lay on the floor. Fowler retrieved an automatic pistol from the truck body.

While Fowler was dealing with Defendant and McClain, Deputy Sheriff Keith Haynes went inside the garage office. He yelled for Fowler to come in the office after finding a blue vinyl bag in a closet inside the office. The bag contained jars and "meth lab equipment." A strong smell of ether or a chemical mixture emanated from the bag. The office and the closet each had walls and doors separating them from each other and from the garage area. Both doors were open when Haynes entered the office. No lights were on inside the office or closet.

The officers searched Defendant and McClain. No contraband was found on Defendant. McClain had some ammunition on his person along with a package of powder which later tested positive for amphetamine.

Other than the substance found on McClain, the only contraband seized at the Bolin Garage came from the blue vinyl bag. No identifying marks were found on the bag. Mr. Bolin and Jiminey denied having any knowledge of it. Fowler testified that he did not observe a blue vinyl bag in the garage during his earlier search for Jansen that morning.

■ Because the State claims Defendant "possessed" chemicals and drug paraphernalia in an attempt to manufacture methamphetamine, the outcome of this case hinges on whether the State's evidence, together with all reasonable inferences, shows that Defendant actually or constructively possessed the contents of the blue vinyl bag. Cases involving possession of a controlled substance found on premises where the accused is located are instructive on this issue.

· To sustain a conviction for possession of a controlled substance, the State must prove that the defendant knowingly and intentionally possessed the proscribed substance. *State v. Moiser,* 738 S.W.2d 549, 558 (Mo.App. E.D.1987). If actual possession is not present, constructive possession of the drugs will satisfy this burden if other facts exist which buttress the inference of defendant's knowledge of the presence of the controlled substance. *Id.* Exclusive control of the premises where the drugs are found raises an inference of possession and control. *Id.* However, where only joint control of the premises is present, some further evidence is needed to connect the defendant with the drugs. *Id.*

*State v. Keeper,* 787 S.W.2d 887, 889–90 (Mo. App.1990).

We believe this case is controlled by *State v. Moiser, supra.* There, the appellate court overturned defendant's conviction of possessing controlled substances. The arresting officers seized more than 35 grams of marijuana from the basement of a house where the defendant was arrested after he had earlier sold a small amount of marijuana from the house. The court observed that (1) no evidence was presented to show that defendant owned, lived at, or was a regular visitor to the house, and (2) defendant was only one of several people present when the search warrant was executed. 738 S.W.2d at 558. Finally, the court stated:

> The evidence at most indicated joint, rather than exclusive, control of the premises. "The mere presence of the accused on the shared premises where the drugs are found does not suffice to convict for possession. *State v. Wiley,* 522 S.W.2d 281, 292[22–25] (Mo. banc 1975). Nor does proximity to the contraband, alone, even as to a substance in plain sight, tend to prove ownership or possession as among several persons who share the premises. *State v. Moore,* 659 S.W.2d 252, 255[3–5] (Mo.App. 1983)." *State v. Bowyer,* 693 S.W.2d 845, 847 (Mo.App.1985).

*Id.*

The *Moiser* court also relied on *State v. Barber,* 635 S.W.2d 342 (Mo.1982), and *State*

*v. Reynolds,* 669 S.W.2d 582 (Mo.App.1984), cases which reversed drug possession convictions for insufficient evidence. The evidence in *Barber, Reynolds,* and *Moiser* is strikingly similar to the evidence in the instant case.

Here, the State presented no evidence to establish that Defendant had regular access to, use or control, whether exclusive or joint, of the closet or any other part of the garage building. The evidence only shows that Defendant was one of several people present in the garage when the contraband was found in a nearby closet.

If mere presence of an accused on shared premises where drugs are found is insufficient to convict for possession, *Wiley,* 522 S.W.2d at 292, mere presence on premises accessible by the public is clearly insufficient to show Defendant possessed the contents of the blue vinyl bag. This case presents nothing more than a defendant's presence on premises where contraband is found in an adjacent area with no evidence or reasonable inferences that Defendant had knowledge or control of such items.

The State argues that Defendant had constructive possession of the contents of the blue vinyl bag because he "had access to and control over the garage where the bag was stashed." To support this tenuous argument, the State relies on *State v. Villa–Perez,* 835 S.W.2d 897 (Mo. banc 1992), stating that case is "somewhat analogous" to the instant matter.

In *Villa–Perez,* defendant, the sole occupant of a large U–Haul truck, was stopped by a highway patrolman on Interstate 44. The officer smelled the odor of marijuana emanating from the truck's locked cargo compartment. Subsequently, 284 pounds of marijuana was discovered inside. The Supreme Court determined that the evidence was sufficient to show defendant "knowingly" possessed marijuana. 835 S.W.2d at 901.

*Villa–Perez* is easily distinguishable from the facts here and does not aid the State. The most obvious distinction results from the defendant's exclusive possession of the truck in *Villa–Perez* compared with no evidence in this case that Defendant had exclusive or joint control of the premises.

Based on the foregoing, we conclude that the State failed to adduce sufficient evidence from which the trier of fact could have reasonably found Defendant guilty.

Because the State had opportunity to fully develop its case, we do not remand for a new trial. *See State v. Mercado,* 887 S.W.2d 688, 692 (Mo.App.1994). The judgment of conviction is reversed and the case remanded with instructions that the trial court enter a judgment of acquittal and order Defendant discharged.

SHRUM and BARNEY, JJ., concur.