**STATE of Missouri, Plaintiff–
Respondent,**

v.

**Vernon PERKINS, Defendant–
Appellant.**

No. 22511.

Missouri Court of Appeals,
Southern District,
Division Two.

June 16, 1999.

Motion for Rehearing and Transfer to
Supreme Court Denied July 6, 1999.

Application for Transfer Denied
Aug. 24, 1999.

1. All statutory references are to RSMo 1994.

Amy M. Bartholow, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Linda Lemke, Asst. Atty. Gen., Jefferson City, for respondent.

KENNETH W. SHRUM, Presiding Judge.

A jury convicted Vernon Perkins (Defendant) of possession of a controlled substance (methamphetamine), § 195.202.[1] The trial judge sentenced Defendant to a term of five years based on the jury's recommendation. Defendant appeals from the judgment of conviction, asserting, *inter alia*, that the evidence was insufficient to convict him of possession of methamphetamine. We agree. We reverse the judgment of conviction and remand for entry of a judgment of acquittal.

## STANDARD OF REVIEW

When reviewing the sufficiency of evidence to support a criminal conviction, we conduct our review in accordance with the standard enunciated in *State v. Dulany,* 781 S.W.2d 52 (Mo.banc 1989):

> "On review, the Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences to the contrary. In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt."

*Id.* at 55[2–3] (citation omitted). The *Dulany* standard applies whether the conviction is based on direct or circumstantial evidence. *State v. Grim,* 854 S.W.2d 403, 405–07[2] (Mo.banc 1993) "All evidence is reviewed by the foregoing standards no matter who submitted it." *State v. Groves,* 886 S.W.2d 675, 678[2] (Mo.App.1994). "Credibility of witnesses and the weight and value to be given their testimony are matters within the province of the jury and are not for review on appeal." *State v. Jenkins,* 776 S.W.2d 59, 63[3] (Mo.App. 1989).

## FACTS

The State's evidence consisted primarily of the testimony of two Branson police officers, Harris and Mabry. The following paragraphs summarize their testimony.

At about 5:30 p.m. on September 20, 1996, Harris took up surveillance of unit 17 at the Hillcrest Inn in Branson, Missouri.

---

1. All statutory references are to RSMo 1994 unless stated otherwise.

From 5:30 until around 9:00 p.m., Harris "watch[ed] people coming and going." He saw no vehicles "drive back down into [the] area in front of unit 17" nor did he "see any individuals walk down towards that area." Around 9:00 p.m., a motel clerk showed Harris a message he was taking to unit 17. As the clerk returned from delivering the message, Harris saw Defendant walking from the area of unit 17. Thereon, Harris arrested Defendant,[2] gave him Miranda warnings, and procured from Defendant a written consent to search "the room that he [Defendant] identified that he was staying in."

Detective Mabry assisted Harris in searching the motel unit. The unit contained two bedrooms and a bathroom. When Mabry entered the bathroom, he immediately called Harris in and pointed to a round light fixture located on the left side of the bathroom mirror. Both officers testified that the fixture contained what appeared to be a "shadow." Harris explained, "[y]ou could clearly tell there was something in this light fixture," and it "looked like it absolutely didn't belong [there]." He said the light was "right at eye level" and he "didn't have any difficulty seeing it." Mabry described the shadow as "inside in the bottom of the light fixture" and stated that it "was obvious." Both testified that the light fixture on the right of the mirror did not have a similar shadow. The officers removed the glass cover from the fixture and discovered two bottles containing methamphetamine.

The police officers also found and seized a set of keys, $1,600 in cash, and a notebook containing the names and addresses of several individuals. The officers found the keys on a bed "in the furtherest back [bed]room." They discovered the $1,600 in Defendant's wallet. Both the notebook and wallet were on a bed in the front bedroom. Detective Mabry testified that

Defendant signed a property sheet acknowledging that the money, notebook, and keys were his property.

The officers did not find a key to the motel unit on Defendant's person or anywhere in the motel unit. Harris conceded that Hillcrest Inn's records showed that Defendant's wife, Cindy, had rented the unit using her maiden name and that Defendant was not registered as a guest. Even so, the officers did not find any women's clothing in unit 17 nor did they find any toiletries that might be associated with a woman.

The defense offered the testimony of Defendant and Cindy. Cindy testified that in September 1996, she was having an affair with Frank Wessels. On September 18, 1996, she rented unit 17 at the Hillcrest Inn in Branson. She registered under her maiden name, and she and Wessels stayed at the motel "several days." On September 20, 1996, Cindy drove Wessels back to his home in Arkansas after an argument. She then picked up Defendant, and they drove back to the Hillcrest Inn in Branson. Cindy explained that she wanted to "see if I could work things out or something with [Defendant]. And then I brought him to the hotel for us to talk." Defendant and Cindy arrived at the motel "about ... nine or ten o'clock in the morning." Sometime between 12:00 p.m. and 1:00 p.m. that day, Cindy drove back to Arkansas. Defendant stayed in the motel unit Cindy had rented. Cindy testified that Defendant never had a key to unit 17, that he was "just visiting," and that she considered the unit to be hers. She identified the keys found by the officers in the motel unit as belonging to her.

Defendant denied having any knowledge that there were drugs in the bathroom light fixture. He testified that when he

**2.** As a pretrial matter, defense counsel and the prosecutor stipulated that the police "had the right to be there" for the purpose of serving a warrant on Defendant. The jury was never told of the warrant. Defense counsel told the trial judge: "[T]he idea is that we

didn't want to get into the Arkansas felony warrant that they were executing. So in order to prevent that, we have agreed to stipulate that they [the police] were lawfully there and it was a lawful arrest."

used the bathroom he did not notice anything in the light fixture. Defendant also testified that the $1,600 discovered in his wallet belonged to him but asserted that it had nothing to do with drugs.

Defendant's first point relied on maintains there was insufficient evidence to support a conviction, particularly with regard to actual or constructive possession of the methamphetamine. Thus, the issue presented is whether the State's evidence, together with all reasonable inferences, proved that Defendant actually or constructively possessed the contraband.

■■■ To support a conviction for possession of methamphetamine, the State needed to produce evidence that Defendant "knowingly and intentionally possessed the substance and was aware of its presence and nature." See Groves, 886 S.W.2d at 678[3]. However, "[a]ctual, physical possession of [methamphetamine was] not required to establish the element of control." See State v. Johnson, 811 S.W.2d 411, 413[3] (Mo.App.1991). Constructive possession will suffice as long as other facts buttress the inference of Defendant's knowledge of the presence of the controlled substance. See State v. Condict, 952 S.W.2d 784, 786[3] (Mo.App.1997). Proof that a defendant had exclusive control over the premises where contraband was discovered, standing alone, raises an inference that he possessed and controlled the contraband. Id. at 786[4].[3] Where two or more persons have joint control of the premises, however, some further evidence is needed to link the defendant with the contraband. Id.

■■■ Defendant insists there was no evidence that he had actual physical possession of the methamphetamine on September 20, 1996. We agree. The State presented no fingerprint evidence from either the medicine bottles containing the methamphetamine or the light fixture in which the bottles were discovered. The

police found no controlled substances on the person of Defendant. Moreover, the contraband was not in plain view so that actual physical possession might be imputed to Defendant because of the obvious presence of the drugs.

■■■ Defendant also asserts that the State did not prove he had exclusive control over the motel unit and that his mere presence in the motel unit was insufficient to show knowledgeable possession. See State v. Janson, 964 S.W.2d 552, 555 (Mo. App.1998). Again, we agree. The State's evidence showed that Defendant did not rent the motel unit; rather, his estranged wife rented the unit and registered under her maiden name. Defendant did not have a key to the motel unit, and the police officers did not find a key to the unit during their search. At best, the State's evidence only permits an inference that Defendant was alone in the motel unit for eight or nine hours before his arrest.

The State argues that such evidence, without more, sufficiently establishes Defendant's exclusive control of the motel unit and supports an inference that he possessed and controlled the drugs found therein. The State cites Groves, 886 S.W.2d 675, to support their position. However, the indicia of control present in Groves does not exist here. In Groves, police officers found a trash bag full of marijuana beside a bed in the defendant's motel room. In reviewing the sufficiency of the evidence, we found the defendant had exclusive control over the room because he (1) rented the room himself; (2) retained the key; (3) was the sole occupant of the room from the time he checked in until the time the marijuana was found; and (4) he requested no maid service, "a fact from which the jury could have inferred his intention to exercise exclusive control over the premises." Id. at 678. Simply stated, Groves is factually distin-

<hr>

3. The basis for this inference is " '[h]uman experience [which] teaches that narcotics are rarely, if ever, found unaccountably in a person's living quarters.' " State v. Wiley, 522

S.W.2d 281, 292 (Mo.banc 1975) (quoting People v. Nettles, 23 Ill.2d 306, 178 N.E.2d 361, 363 (1961)).

guishable from the case at bar. Here, there is no evidence that Defendant continuously occupied or controlled the motel unit to the extent the defendant did in *Groves.* We reject the State's argument to the contrary.

■ Lastly, Defendant argues that not only did the State fail to prove his exclusive use or possession of the premises, it also failed to present any incriminating circumstance from which a jury could infer he knew of the presence of the methamphetamine. Consequently, Defendant insists that reversal is mandated. *See Wiley,* 522 S.W.2d at 292; *State v. Lowe,* 574 S.W.2d 515 (Mo.App.1978). Once more, we agree. There is no evidence that Defendant was visibly nervous when arrested or when he consented to the officers' request to search, nor is there any evidence that Defendant acted in such a manner as to suggest he was attempting to conceal something. *Cf. State v. Mishler,* 908 S.W.2d 888, 892[7] (Mo.App.1995) (holding that visible nervousness and actions suggesting an attempt to conceal are incriminating facts that will support conviction if consistent with the totality of the circumstances). As already noted, the methamphetamine was not in plain view but was hidden in medicine bottles that were concealed in a bathroom light fixture. The State presented no fingerprint evidence. Defendant had no personal effects in the bathroom. In short, there is no evidence from which it can reasonably be inferred that Defendant had knowledge that methamphetamine was hidden in his estranged wife's motel unit.

In reaching this conclusion, we have not ignored other arguments proffered by the State. For instance, the State asserts that "[t]here were no drugs in the room when [Cindy] left, [Defendant] had exclusive control over the room for the next nine hours, the bottles of drugs were obvious, and Defendant had a large amount of cash in his billfold." The State argues that "[t]hese facts support an inference that [Defendant] had knowledge of the drugs in his room." However, most of these asser-

tions of "fact" are not supported by the record. For instance, the following is the only evidence regarding whether there were drugs in the motel unit at the time Cindy left.

"Q. [To Cindy] And you and your boyfriend weren't using any drugs, were you?"

"A. I was not."

"Q. And there weren't any drugs in that motel room when you left?"

"A. Not that I was aware of, no."

As to the obvious nature of the medicine bottles in the bathroom light fixture, Cindy testified that she "didn't pay much attention" and never "notice[d] any items ... located" in the light fixture when she used the bathroom.

The foregoing testimony is not evidence that "there were no drugs in the room when [Cindy] left" or that the "bottles of drugs were obvious." Notably, neither Officer Harris nor Officer Mabry ever stated that the "bottles of drugs were obvious." They testified only that because of shadows in the light fixture, "[y]ou could clearly tell there was something in this light fixture" and it "looked like it absolutely didn't belong [there]."

As to the State's claim that Defendant had "a large amount of cash in his billfold," there is no evidence that links the cash to the methamphetamine. The State presented no evidence of drug residue on the money. The State does not cite authority for the proposition that the mere presence of $1,600 cash (or a comparable sum) in Defendant's billfold supports an inference that Defendant had knowledge of the presence of or constructively possessed methamphetamine hidden in the motel unit. We conclude that this evidence, standing alone, is not sufficient to support a conviction under the totality of the circumstances.

Despite our careful scrutiny of the record, we have found no other evidence that would support an inference that Defendant knew about the methamphetamine and had

control over it based on his statements, admissions, conduct, or the situation. *See Lowe,* 574 S.W.2d at 520 n. 2. In that regard we note that Defendant was outside the motel unit when arrested. There is no evidence that he attempted to flee or hide anything, that he appeared nervous or upset, or that he hesitated to or questioned whether he should sign the consent to search form. At most, the evidence shows that Defendant was alone for eight or nine hours in a motel unit rented two days earlier by his estranged wife, that he had $1,600 cash in his billfold, and that he had used the motel unit bathroom in which a light fixture contained "shadows" suggesting it contained something that did not belong there. "The rule which requires that an inculpation in addition to joint use of premises be shown for a submissible issue of constructive possession shows judicial wariness that guilt on circumstantial evidence be imputed only on substantial proof." *Id.* at 522.

Based on the foregoing, we find that the State failed to adduce substantial proof from which the jury could reasonably have found Defendant guilty. Because the State had the opportunity to fully develop its case, we will not remand for a new trial. *See Condict,* 952 S.W.2d at 787. The judgment of conviction is reversed and the case remanded with instructions that the trial court enter a judgment of acquittal and order Defendant discharged.

MONTGOMERY, J., and BARNEY, J., CONCUR.