STATE of Missouri, Plaintiff–
Respondent,

v.

Roy W. NICHOLS, Defendant–
Appellant.

No. 23198.

Missouri Court of Appeals,
Southern District,
Division Two.

June 27, 2000.

Jeremiah W. (Jay) Nixon, Atty. Gen., Adriane D. Crouse, Asst. Atty. Gen., Jefferson City, for respondent.

JAMES K. PREWITT, Judge.

Following trial by jury, Defendant was convicted of possession of a controlled substance and sentenced to five years in prison. Defendant appeals presenting three points relied on, including that the evidence was insufficient to sustain the conviction.

"In reviewing to determine if evidence is sufficient, an appellate court considers the evidence together with all reasonable inferences drawn therefrom, in the light most favorable to the verdict, and disregards all contrary evidence and inferences." *State v. Yarber,* 5 S.W.3d 592, 593 (Mo.App.1999). We state the evidence by that standard.

On March 2, 1998, Jasper County deputy sheriffs, acting on a suspicion that there was a methamphetamine lab at the residence, entered a house rented by Defendant's wife, with a search warrant, and discovered methamphetamines. No one was home at the time of the search. An officer present during the search testified that upon entry, he detected an odor he associated from past experiences with the manufacture of methamphetamines.

In plain view, the deputies saw layered liquids in glass containers common to the production of methamphetamines. Other containers were found in the refrigerator and freezer compartment, one of which was later found to contain liquid methamphetamine. A coffee pot and coffee filters with white powder and red residue, later determined to be red phosphorus, were found on a kitchen counter, and "chunks" of red phosphorus were discovered in a toolbox in the utility room. They also found decongestant cold tablets, some packaged and some loose. A baggie containing 6.56 grams of methamphetamine was found in the master bedroom. The

Ellen H. Flottman, Asst. Public Defender, Columbia, for appellant.

State presented no fingerprint evidence from any of the items seized in the house.

According to testimony from sheriff's deputy Tony Coleman, a truck parked behind the residence was later determined to be registered to the Defendant and Tashona Nichols. A marriage certificate issued to Roy and Jaime Nichols hung on the wall, as did a photograph that included Defendant.

Merle Lortz, owner of the house where the drugs were found testified the house was leased to Matt and Jaime Reeder (Jaime and Defendant were married at the time of the search) and that Defendant "was there some." When asked if he knew where Defendant resided in March and February of 1998, Mr. Lortz responded, "Not unless he was living there, and I don't know that."

Lortz testified that Defendant had told him Jaime had lost her job, that they were going to separate, and that Defendant would help her out with one month's rent by working on a Jeep for Lortz. When asked where Defendant resided in April, May, and June, Lortz responded, "I know he wasn't over there very often, but he was there some because he was working on a car for me," and "that's the reason I know he wasn't at the residence for many times because I couldn't catch him there." The landlord said Defendant asked him if he had given the law enforcement personnel a key to the house and whether his name was on any of the lease documents or to whom the house was rented. Lortz said he told Defendant the house was rented to "Jaime."

A woman who claimed she was having an affair with Defendant testified that he was a mechanic and kept tools at that house. The woman also testified she had taken their son to the house to visit with his father, the Defendant. When that occurred was not shown. Other facts will be mentioned in discussing Defendant's contentions.

In his first point, Defendant asserts that the trial court erred in denying his motion for judgment of acquittal because evidence was insufficient to show he possessed methamphetamines as the "State merely put on evidence that Jaime Nichols rented the house where the methamphetamine was found and that [Defendant's] truck was parked behind it when it was searched."

Defendant contests the sufficiency of the evidence "to prove beyond a reasonable doubt that [Defendant] possessed a controlled substance," and contends that the State's evidence did not demonstrate that Defendant "actually or constructively possessed the substance." Defendant contends he was not in actual possession of the methamphetamine, was not in the house when the search occurred, and his connection to the house "was tenuous at best."

The State counters that there was sufficient evidence as, in addition to that cited in Defendant's first point, police found papers and mail throughout the house on which Defendant's name appeared; a marriage certificate documenting Defendant's marriage to Jaime Nichols; a picture of Defendant hung on the wall; and a prescription bottle bearing Defendant's name and dated 6–30–97 contained a knotted baggie of white powder and baggies of marijuana seeds found in a kitchen cabinet. The State also relied upon testimony from the landlord that he had seen Defendant at the house in February and March of 1998, and Defendant had worked on his Jeep a few months later for payment of one month's rent. There was evidence that Defendant was a mechanic and kept tools at that house. Red phosphorus containing methamphetamine was discovered in a toolbox in the house. The State urges that Defendant knew of the drugs' presence and nature because of strong fumes associated with methamphetamine labs.

On appeal from a judgment in a jury-tried case, an appellate court determines whether there is sufficient evidence from

which the jury could have reasonably found guilt. *State v. Scott*, 996 S.W.2d 745, 747 (Mo.App.1999). When the appellate court reviews a challenge to the sufficiency of the evidence in a criminal case, the Court determines whether the evidence was sufficient to allow a reasonable jury to find the defendant guilty beyond a reasonable doubt. *State v. Edgar*, 2 S.W.3d 896, 897 (Mo.App.1999). This standard applies whether the conviction is based on direct or circumstantial evidence, regardless of who submitted the evidence. *State v. Perkins*, 996 S.W.2d 753, 754 (Mo. App.1999). Credibility of witnesses and the weight and value to be given their testimony are matters within the province of the jury and are not for review on appeal. *Id.*

■ To sustain a conviction for possession of a controlled substance, the State must prove that the defendant knowingly and intentionally possessed the proscribed substance. To meet this burden, conscious, intentional possession, either actual or constructive, must be established. *State v. Barber*, 635 S.W.2d 342, 343 (Mo. banc 1982). The State must also show that the defendant was aware of the presence and nature of the substances in question. *Id.* Both possession and knowledge may be proved by circumstantial evidence. If actual possession has not been shown, "constructive possession will suffice when other facts buttress an inference of defendant's knowledge of the presence of the controlled substance." *Id.*

■ Exclusive control of the premises on which controlled substances are found raises an inference of possession and control of those substances. *Barber*, 635 S.W.2d at 343. But if there is joint control of the premises, some further evidence is necessary to connect the accused with the drugs. *Id.*

"The rule which requires that an inculpation in addition to joint use of premises be shown for a submissible issue of constructive possession shows judicial wariness that guilt on circumstantial evidence be imputed only on substantial proof." *Perkins*, 996 S.W.2d at 758.

■ Although there is some indication that Defendant may have, at one time, resided in the house, it was not established that he was living there at the time of the prohibited activity. It was not even shown that he was ever there when the prohibited activity occurred. No evidence shows how long it had been happening. Obviously, when the renter of the house apparently resided there, Defendant, even when there, did not have exclusive possession or control of the premises. Defendant's questions to the landlord do not establish any consciousness of guilt, as he could very well have been curious about how the deputies got into the house and was worried about involvement, whether or not he was guilty.

■ Finding red phosphorus in the toolbox does not establish that he put it there or that he knew it was there. There may be an inference that it was his toolbox because of evidence that he kept tools in the house, but taking the further step that anything in the toolbox was there by his action or knowledge would be building inference upon inference. An additional inference may not be drawn solely from a fact based only upon inference. *State v. Woodworth*, 941 S.W.2d 679, 689 (Mo.App. 1997). This standard is intended "to guard against attenuated reasoning based on evidence too remote or uncertain or lacking in probative force." *Id.*

Although no two cases are exactly alike, review of numerous cases involving possession of controlled substances on shared premises convinces us that the evidence did not establish Defendant's guilt beyond a reasonable doubt. *See State v. Barber*, 635 S.W.2d 342 (Mo.1982); *State v. Perkins*, 996 S.W.2d 753 (Mo.App.1999); *State v. Janson*, 964 S.W.2d 552 (Mo.App.1998); *State v. Condict*, 952 S.W.2d 784 (Mo.App. 1997); *State v. Reynolds*, 669 S.W.2d 582 (Mo.App.1984). *See also State v. Yarber*, 5

S.W.3d 592 (Mo.App.1999)(controlled substance in vehicle).

■ Because the State had the opportunity to fully develop its case, we do not remand for a new trial. *Condict*, 952 S.W.2d at 787.

The judgment of conviction is reversed and the case remanded with instructions that the trial court enter a judgment of acquittal and order Defendant discharged.

MONTGOMERY, P.J., and GARRISON, C.J., concur.