## Audrey WRIGHTSELL *v.* Lott JOHNSON

CA 01-473 72 S.W.3d 114

Court of Appeals of Arkansas
Divisions IV and I
Opinion delivered April 3, 2002

*Richard J. Orintas*, for appellant.

*Cross, Kearney & McKissic*, by: *Othello C. Cross*, for appellee.

WENDELL L. GRIFFEN, Judge. Appellant Audrey Wrightsell challenges a Lonoke County chancellor's order that granted appellant a constructive trust in a one-tenth interest in property that Wrightsell deeded to her brother, appellee Lott Johnson. As her sole point on appeal, appellant contends that the chancellor erred by not imposing a constructive trust on two-thirds of seventy-nine acres acquired by appellee pursuant to an agreement between the parties. We hold that the chancellor's ruling is inconsistent with his findings. Thus, we reverse and remand.

## Factual and Procedural History

The parties, along with their eight sisters, acquired 159 acres of land located in Lonoke County, Arkansas, from their parents.[1] Afterward, six of the siblings deeded their interests to Larry Atkinson and Steve Smith, while the remaining four, including appellant, retained their interests.

In 1998, a petition to partition the 159-acre parcel was filed by Atkinson and Smith, owners of the six-tenths interest, against the owners of the four-tenths interest. Subsequently, appellant and her sister, Freddie Perkins, deeded their fractional interests to appellee, who arranged a settlement of the partition petition and received seventy-nine acres of land solely in his name. Appellee procured settlement funds with a mortgage on the seventy-nine acres, and paid another sister, Pearl Johnson, $15,000 out of the funds.

The present parties then became embroiled in a dispute regarding ownership of the seventy-nine acres. Appellant alleged that she and Freddie Perkins only deeded their interest to appellee to allow him to obtain a loan and use the loan money to settle the 1998 partition petition. She claimed that appellee agreed to subsequently re-deed the seventy-nine acres in order for appellant, Perkins, and appellee to share the property jointly and equally.

Appellant filed a cause of action in Lonoke County Chancery Court, alleging that appellee falsely and fraudulently represented and promised appellant that if she signed a deed of her property to him, he would use the deed to purchase other property and then reissue a deed, naming appellant and appellee as co-tenants. She requested that the court order appellee to cancel the deed or order appellee to add her name to the deed. Appellant's sister, Freddie Perkins, did not join her cause of action. Appellee responded that the conveyance represented a gift. On October 31, 2000, and November 28, 2000, the chancellor heard testimony on the matter.

---

[1] The property is described as follows:
South half of the Southwest Quarter of Section 13, Township Two South, Range Seven West (S ½ SW 1/4, T-2-S, R-7-W) Lonoke County, Arkansas.

Garland Johnson Shy testified that after her parents left their ten children 159 acres of property in Lonoke County, six of the children, including Ms. Shy, wanted to sell the land and four[2] did not wish to sell. The property was originally separated into two tracts, with one eighty-acre tract consisting of wooded area and another seventy-nine-acre tract that could be leased for farmland or flooded to attract waterfowl and hunting. Ms. Shy found two hunters, Larry Atkinson and Steve Smith, who agreed to purchase a six-tenths interest in the 159 acres. Ms. Shy testified that she handled the sale in 1997 and that each of the six children who favored selling received $14,500 for each of their interests. Atkinson and Smith later filed a partition suit and wanted Shy to persuade her other four siblings to selling their four-tenths interest. Shy testified that the four remained adamant about not selling, and that appellant did not want to sell or gift her interest, but wanted the property to remain in the family. Shy also testified that appellant trusted appellee.

Appellee testified that he acquired a deed from his two sisters on June 20, 1998. He corroborated Ms. Shy's testimony that appellant wanted to keep the property in the family, and testified that appellant gave him the quitclaim deed of her interest in the property to keep it in the family. He testified that he contacted appellant about repairing a pump on the irrigation well on the property, and that appellant gave him a check after she had already deeded and given him the property. Appellee testified that after he acquired the interest of Pearl Johnson, Freddie Perkins and appellant, he obtained a loan secured by a mortgage on the property. He then settled the partition suit by paying $14,500 jointly to Atkinson and Smith, the owners of the sixth-tenths interest, and by relinquishing an undivided four-tenths interest in the eighty-acre tract. In return, Atkinson and Smith conveyed their undivided six-tenths interest in the seventy-nine-acre-open tract to appellee. Appellee also paid $15,000 to his sister Pearl Johnson, and gave appellant and Freddie Perkins $1,030 each.

---

[2] The four children who did not wish to sell were appellee, appellant, Pearl Johnson, and Freddie Perkins.

Upon redirect examination, Garland Shy testified that when appellant was approached about selling the entire 159-acre parcel, she would not sell, and that her other sisters were not willing to deed their property to appellee in order for him to secure a loan to purchase the property. She testified that Freddie Perkins chose not to sell the land because she wanted it to stay in the family. Shy stated that Ms. Perkins did not give her interest to appellee because Perkins was on disability and was unable to give anything away due to her medical and financial condition. Shy again relayed that Ms. Perkins and appellant deeded their interest to appellee so that appellee could get a loan to purchase other property from the owners of the sixth-tenths interest.

Appellant testified that she lived in Chicago and that she and her sister (Perkins) quitclaimed their interests to appellee because he had to have a certain amount in order to secure the loan. She stated that appellee told her and Perkins that if the three of them went in together, everything would be split four ways to include their sister Pearl. She testified that the quit claim deed was not a gift. Appellant stated that appellee wanted the deed in order to have collateral and to sue Atkinson and Smith because the land was wrongfully sold. She stated that her father's will provided that the property had to be offered to each brother and sister before it could be sold to an outside person. Appellant testified that after appellee secured a loan, appellee bought Steve Smith's and Larry Atkinson's interests. Appellee then borrowed $4,000 more and gave appellant and Freddie Perkins $1,030. She testified that the only way that she and her brother could buy the seventy-nine-acre tract was to put their interests together and borrow the money in order to have enough collateral to buy the property back. Appellant testified that she never talked with appellee about giving him a gift and that she and her sister never received anything for the property. She testified that the sole purpose of the transaction was to get the property and to keep it in the family. Appellant stated that she and her sister paid appellee money to retain an attorney. In addition, appellant testified that she gave appellee $200 in 1999 for work on a pump after the quitclaim transaction (between herself and appellee) because she was under the impression that she still owned an interest in the property. She also gave appellee

$100 for a levee. Appellant testified that she and her brother had a verbal agreement, and that he kept her informed of the transactions relating to the partition suit and the settlement negotiations with Atkinson and Smith. However, appellant testified that after she gave notice to her brother to add her name to the deed, he refused to do so.

Following the hearing, the chancellor found 1) that appellant did not meet her burden of proving that appellee fraudulently and deceitfully acquired appellant's interest in the property, 2) that appellant did not intend to convey a gift to appellee, 3) that appellant and appellee had a confidential and trusting relationship, 4) that appellant relied heavily on appellee's knowledge and expertise, and 5) that appellee was unjustly enriched in his dealings with appellant. The chancellor then imposed a constructive trust in favor of appellant of a 1/10 interest in the property she conveyed to appellee. The chancellor determined the value of the property at the time of the conveyance at $15,000. He then imposed a constructive trust on appellee's property in the amount of $15,000 and ordered that the trust be secured by an equitable lien.

## Analysis

As her sole point on appeal, appellant contends that the chancellor erred and made a mistake by not imposing a constructive trust on two-thirds of the seventy-nine acres acquired by appellee, when the evidence clearly demonstrated that the parties had an agreement that the seventy-nine acres would be shared equally among appellant, appellee, and their sister Freddie Perkins. Although we agree with the chancellor's decision to impose a constructive trust, we hold that the chancellor clearly erred in decreeing that appellant was entitled to only a one-tenth interest in the seventy-nine-acre tract that appellee acquired after she quit-claimed her one-tenth interest in the 159-acre parcel to him so he could settle the petition suit with Atkinson and Smith.

Constructive trusts are implied trusts that arise by operation of law when equity so dictates. *See Hall v. Superior Fed. Bank*, 303 Ark. 125, 794 S.W.2d 611 (1990). These trusts are imposed against a person who secures a legal title by violating a

confidential relationship or fiduciary duty, or who intentionally makes a false oral promise to hold legal title for a specific purpose and after having acquired the title, claims the property for himself. *See Andres v. Andres,* 1 Ark. App. 75, 613 S.W.2d 404 (1981). Constructive trusts are remedial and are imposed to prevent situations of unjust enrichment when the circumstances demonstrate that an individual has an equitable duty to convey title of the disputed property to another because of a determination that the beneficial interest should not accompany the legal title and that the person would be unduly enriched if he were allowed to retain the property. *See Betts v. Betts,* 326 Ark. 544, 932 S.W.2d 336 (1996).

■ ■ In *Nichols v. Wray,* 325 Ark. 326, 952 S.W.2d 785 (1996), our supreme court set out the following guidelines for appellate review of a chancellor's decision regarding a constructive trust:

> To impose a constructive trust, there must be full, clear and convincing evidence leaving no doubt with respect to the necessary facts, and the burden is especially great when a title to real estate is sought to be overturned by parol evidence. The test on review is not whether the court is convinced that there is clear and convincing evidence to support the chancellor's finding but whether it can say the chancellor's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous, and we defer to the superior position of the chancellor to evaluate the evidence. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Id.* at 333, 925 S.W.2d at 789 (citations omitted).

In the present case, appellant's complaint sought a one-half interest in the property she alleged that appellee acquired as a result of his false representations. At the conclusion of the hearing, the chancellor found that appellant did not meet her burden of demonstrating that appellee acquired appellant's interest by fraud or deceit. The chancellor also found that appellant did not intend her one-tenth interest (in the 159-acre tract that she originally conveyed) to be a gift to appellee.

■ However, the pleadings, the argument presented at trial, and the proof do not support the decree of a constructive trust equal to a one-tenth interest in the property appellant conveyed to appellee. That decree cannot stand because appellant's one-tenth interest in the 159-acre parcel was sold by appellee in the transaction with Atkinson and Smith. The transaction resulted in appellee receiving the seventy-nine-acre tract that he plainly was able to acquire only with help from appellant and their other sister (Pearl Johnson). While we agree with the chancellor that appellant did not prove her allegation that appellee obtained the quitclaim deed to her one-tenth interest in the 159-acre tract by fraud, it is equally clear that the chancellor did not err by finding that the quitclaim deed from appellant to appellee was not a gift. As such, the decision to impose a constructive trust was not clearly erroneous.

On appellate review, however, we are unable to determine the basis for the chancellor's decision that appellant is entitled to a one-tenth interest in the seventy-nine-acre tract that appellee obtained with her help. Whatever else may be disputed, it appears clear on our *de novo* review that appellant's contribution of her one-tenth interest in the 159-acre family parcel was equal to what appellee contributed. However, appellee also obtained financing to acquire the seventy-nine-acre tract in the settlement with Atkinson and Smith by borrowing funds in his own name. Even after appellant had relinquished her one-tenth interest in the larger parcel, appellee obtained funds from her for expenses related to the property he ultimately secured. In view of these facts, it is not clear why the chancellor did not grant her prayer to be added to the deed to the seventy-nine-acre tract, subject to appellant joining appellee on the mortgage. Thus, further proceedings are needed to allow the chancellor to fashion relief consistent with the constructive trust determination, yet more representative of appellant's contribution to the seventy-nine-acre tract now held by appellee in his own name. Because the chancellor's findings are inconsistent with the relief granted, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

HART, ROBBINS, and NEAL, JJ., agree.

STROUD, C.J., and ROAF, J., dissent.

ANDREE LAYTON ROAF, Judge, dissenting. I would affirm both the trial court's decision to grant equitable relief in this case and the relief that he fashioned. In fact, the appellant's attorney moved at the end of the trial testimony to conform the pleadings to the proof and asked the trial court to impose a constructive trust on the property; the chancellor did just that. The chancellor found that the appellant had failed to prove fraud, misrepresentation, or an agreement with Johnson, but that appellant's deed to Johnson had not been a gift, and that Johnson had been unjustly enriched in his dealings with appellant. The chancellor awarded appellant $15,000, the value of her original one-tenth interest in the 179 acres, and imposed a constructive trust on the property in the form of an equitable lien.

Although not in the appellant's abstract, the chancellor carefully stated the reasons for his decision at the conclusion of the trial. The chancellor also stated that he could fashion any equitable remedy he deemed appropriate. I cannot say that the court clearly erred in any of his findings, including that appellant failed to prove fraud, that she also failed to prove that appellee specifically agreed to deed to his sisters two-thirds or any amount of the property after the partition suit was resolved, and that appellant had risked nothing but her original one-tenth interest in transferring title to Johnson so that he could attempt to stave off the partition and sale of the property. Significantly, the other sister involved in this alleged agreement neither participated in the suit, nor testified at trial to corroborate appellant's version of events. Moreover, appellant did not claim a half-interest in the property as asserted in the majority opinion, she claimed two-thirds. And, it is clear from reviewing the transcript that appellant made a number of questionable and contradictory statements during her testimony and was evasive in answering some of the questions posed to her. Of course, the trial court ultimately must judge the credibility of the witnesses. *Word v. Remick*, 75 Ark. App. 390, 58 S.W.3d 422 (2001). I find the relief granted by the trial court appropriate and fair when the entire record is considered.

Moreover, while appellant initially held only a one-tenth undivided interest in the 179 acres before the partition action was filed, it is unclear from the majority opinion just what her interest in the 79 acres now held by appellee should be on remand, one-third, one-half, 17.9 acres, or some other amount. Apparently, this decision is to be left to the trial court, conditioned upon appellant "joining" appellee on his mortgage, a feat that may be easier said than done. We ought to leave well enough alone, and affirm this case.

STROUD, C.J., joins.