

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent, | ) |
| | )    **WD79179** |
| v. | ) |
| | )    **OPINION FILED:** |
| | )    **November 22, 2016** |
| FRANK GEORGE JINDRA, | ) |
| | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Howard County, Missouri**
**The Honorable Scott A. Hayes, Judge**

**Before Division Two:** Lisa White Hardwick, Presiding Judge, and
Karen King Mitchell and Anthony Rex Gabbert, Judges

Frank Jindra appeals, following a jury trial, his convictions of two counts of tampering with a judicial officer, § 565.084,[1] for which he was sentenced to consecutive terms of one year in the county jail on the first count, and six months in the county jail on the second count. The execution of Jindra's six-month sentence was suspended, and he was placed on probation for five years. Jindra challenges the sufficiency of the evidence to support both convictions. Finding no error, we affirm.

---

[1] All statutory citations are to the Revised Statutes of Missouri 2000, as updated through the 2014 Cumulative Supplement.

## Background[2]

On February 23, 2015, Jindra filed two adult abuse petitions in Boone County Circuit Court with deputy court clerk Latoya Gatewood. Gatewood gave the petitions to Judge Leslie Schneider, who denied the petitions the following day. Jindra contacted Gatewood to inquire about the status of his petitions, and Gatewood advised that they had been denied, but the matter was set for a hearing the following month. Jindra became upset, asking what he was supposed to do about the two subjects of his petitions, and Gatewood advised him to contact law enforcement. Jindra asked Gatewood which judge had denied his petitions, and Gatewood told him it was Judge Schneider. Jindra then stated that "she would be on the NBC 17 news, and that he was going to get his gun." Gatewood hung up the phone and immediately contacted Judge Schneider, who advised Gatewood to contact the court marshals. Gatewood understood Jindra to be making a serious threat; he was very angry and frustrated.

Judge Schneider also interpreted Jindra's statement to be a threat, which she took seriously. After learning that an attorney in her husband's law firm previously represented Jindra, Judge Schneider contacted her husband to get his perspective on how concerned they should be with the threat. After speaking with her husband, Judge Schneider was very concerned. Both the sheriff's office and the court marshals advised Judge Schneider not to go home that evening.

After speaking with Gatewood, Jindra contacted the Jones, Schneider, and Stevens law firm, where Judge Schneider's husband was a senior partner. After several unsuccessful attempts to speak with a different attorney at the firm, Jindra eventually asked for Judge Schneider's husband by name. Schneider was not immediately available, so Jindra continued to call back, each time getting angrier and being loud and belligerent with the receptionist, accusing her of lying

---

[2] We view the evidence in the light most favorable to the verdict and disregard contrary evidence. *State v. Hamilton*, 130 S.W.3d 718, 719 (Mo. App. S.D. 2004).

2

about Schneider's availability. The receptionist asked Jindra why he needed to speak with Schneider, as Schneider had never represented Jindra, and Jindra said it was because Schneider was married to Judge Schneider. Jindra then advised the receptionist that the firm had "a really nice private parking lot, and that . . . maybe [they] would like to have happen to [them] what had happened to him in his parking lot in [their] nice parking lot." The receptionist did not immediately understand what Jindra meant, but after speaking with an attorney in the firm that had previously represented Jindra, she understood his comment to be a threat. The police were called, and officers escorted each employee of the firm to their vehicles.

Jindra was eventually put through to Schneider, but upon learning the identity of the caller, Schneider immediately hung up the phone.

Boone County Sheriff's deputy Alexandria Leiva initially responded to the Boone County courthouse, but then went to Jindra's residence with three other law enforcement officers for further investigation. After the officers knocked, Jindra opened the door with a rifle in his hand. The officers drew their weapons and ordered Jindra to drop the rifle. Instead of dropping the rifle, Jindra passed the rifle back and forth between his hands before handing it to one of the officers.

Jindra was advised of his *Miranda*[3] warnings, and he agreed to speak with the officers. Jindra admitted calling the courthouse and speaking with a woman who told him that Judge Schneider had denied his adult abuse petitions. Jindra acknowledged stating that Judge Schneider would be on the news and mentioning a gun to the woman he spoke with. Jindra also admitted contacting Judge Schneider's husband "to get him to talk to his wife and see reason." When asked if he made any threats that day, Jindra "denied that they were threats," instead

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

indicating that "he had promised to do certain things." Jindra also indicated that "he had promised to shoot them in the legs, and not kill them."

Jindra was charged with two counts of tampering with a judicial officer; Count I was directed at the communication he made to Gatewood regarding Judge Schneider, and Count II was directed at his effort to contact Judge Schneider's husband. The jury found Jindra guilty as charged and recommended sentences of one year in the county jail on Count I and six months in the county jail on Count II. The court followed the jury's recommendation, ordered the sentences run consecutively, and suspended execution on Count II in favor of a five-year term of probation. Jindra appeals.

**Analysis**

Jindra raises two points on appeal, challenging the sufficiency of the evidence to support each of his convictions. "In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Hamilton*, 130 S.W.3d 718, 719 (Mo. App. S.D. 2004) (quoting *State v. Dulaney*, 781 S.W.2d 52, 55 (Mo. banc 1989)). "[T]his court accepts as true the evidence at trial most favorable to the verdict," and "[e]vidence to the contrary is disregarded." *Id*.

"A person commits the crime of tampering with a judicial officer if, with the purpose to harass, intimidate or influence a judicial officer in the performance of such officer's official duties, such person . . . [e]ngages in conduct reasonably calculated to harass or alarm such judicial officer or such judicial officer's family . . . ." § 565.084.1(4).

4

**Count I**

In Point I, Jindra argues that the evidence was insufficient to prove that his statements to Gatewood about Judge Schneider being on the news and Jindra getting a gun were made for the purpose of harassing, intimidating, or influencing Judge Schneider.

"A person 'acts purposely[,'] or with purpose, with respect . . . to a result [of his conduct] when it is his conscious object . . . to cause that result." § 562.016.2. Thus, to be sufficient, the evidence needed to support a finding that Jindra intended to harass or intimidate Judge Schneider with his remarks to Gatewood.

Here, immediately upon learning the identity of the judge denying his petitions, Jindra stated that she would "be on the NBC 17 news" and that he was going to get his gun. When Jindra made these assertions, he was very angry. Gatewood understood them to be a threat that Jindra planned to shoot Judge Schneider. When he was arrested, Jindra—who answered the door holding a rifle—even advised Deputy Leiva that his statements were "promises" to "shoot them in the legs." Though Jindra, in his own testimony, claimed that his statements were not threats directed at Judge Schneider but were, instead, stray comments about the subjects of his adult abuse petitions, resolution of this factual matter was for the jury. *See, e.g., State v. Holmes*, 491 S.W.3d 214, 218 n.1 (Mo. App. W.D. 2016) (holding that interpretation of an ambiguous remark made by the defendant, which could have been interpreted either as a request for the victim to act as a confidential informant or as a request for sex, was an issue for the jury's resolution); *State v. Green*, 798 S.W.2d 498, 504 (Mo. App. S.D. 1990) (holding that it was for the jury to decide whether the defendant's statement, "things went a little too far," was an admission of guilt); *State v. Sproling*, 752 S.W.2d 884, 888, 889 (Mo. App. E.D. 1988) (holding that the meaning of the defendant's statement that he would "take the case himself" "was for the jury" to determine).

5

Under our standard of review, we assume that the jury interpreted Jindra's remarks in a manner consistent with its verdict, *i.e.*, the jury found that Jindra's remarks constituted a threat to shoot Judge Schneider. Plainly, the purpose of such a threat is to harass or intimidate its subject. Accordingly, the evidence was sufficient to support Jindra's conviction on Count I. Point I is denied.

## Count II

In Point II, Jindra argues that the evidence was insufficient to prove that his communication with Judge Schneider's husband was conduct reasonably calculated to harass or alarm Judge Schneider in the performance of her judicial duties.

Section 565.084 does not define what it means for conduct to be deemed "reasonably calculated to harass or alarm," but a similar requirement exists under 18 U.S.C. § 2113(a), the federal bank robbery statute, which prohibits the taking of any property or money "by intimidation." Federal courts have indicated that, "[f]or intimidation to occur under 18 U.S.C. § 2113(a), a defendant's conduct must be 'reasonably calculated to produce fear.'" *U.S. v. Wagstaff*, 865 F.2d 626, 627 (4th Cir. 1989) (quoting *U.S. v. Amos*, 566 F.2d 899, 901 (4th Cir. 1977)). A defendant's conduct has been deemed "reasonably calculated to produce fear . . . when an ordinary person in the [victim's] position reasonably could infer a threat of bodily harm from the defendant's acts." *Id*. (quoting *U.S. v. Higdon*, 832 F.2d 312, 315 (5th Cir. 1987)).

Here, Jindra contacted Judge Schneider's husband with the admitted purpose of "get[ting] him to talk to his wife and see reason." And in his efforts to contact Judge Schneider's husband, Jindra suggested to an employee of Schneider's law firm that "maybe [they] would like to have happen to [them] what had happened to him in his parking lot in [their] nice parking lot."[4] Because

---

[4] Though Jindra does not raise the issue, it does not matter that his threat was made to the receptionist, rather than directly to Judge Schneider's husband, so long as "he could logically have expected the threats to be

6

Jindra had been previously represented by a member of Schneider's firm who knew "what had happened to [Jindra] in his parking lot," it was reasonable for the jury to believe that Jindra knew that his words would be considered a threat to the well-being of those at Schneider's firm, including Judge Schneider's husband, and therefore were reasonably calculated to harass or alarm Judge Schneider. *See Hamilton v. State*, 208 S.W.3d 344, 346, 351 (Mo. App. S.D. 2006) (holding that defendant's conduct was "reasonably calculated to harass or alarm" where the defendant made the veiled threat, "You'd better make sure she's not my officer when I come out," within earshot of an individual who was familiar with his violent propensities).

Jindra argues that his conduct demonstrated nothing more than an attempt to obtain inappropriate *ex parte* assistance from Judge Schneider's husband. But again, this was a factual matter for the jury's resolution. And viewing the facts and reasonable inferences in a light most favorable to the verdict, the jury had sufficient evidence from which to determine that Jindra's conduct was reasonably calculated to harass or alarm Judge Schneider by threatening her husband and not merely an attempt to engage in an inappropriate *ex parte* contact. Point II is denied.

### Conclusion

The evidence was sufficient to support both of Jindra's convictions. The trial court's judgment is affirmed.

_____
Karen King Mitchell, Judge

Lisa White Hardwick, Presiding Judge, and
Anthony Rex Gabbert, Judge, concur.

---

communicated to [Judge Schneider or her husband] in order that [they] could take reasonable steps to protect [themselves]." *State v. Hamilton*, 130 S.W.3d at 720. "The conveyance of such threats would be natural and probable consequences of defendant's acts." *Id*.

7