DON E. BURRELL, P.J.
A jury found Michael D. Bell ("Defendant") guilty of two counts of tampering with a judicial officer. See section 565.084.1.[1] Finding no merit in either of Defendant's points on appeal, we affirm the judgment of conviction.
The Evidence
We summarize here only the evidence relevant to resolving Defendant's points, and we present it "in the light most favorable to the ruling, disregarding any *600 contrary evidence and inferences and deferring to the circuit court's credibility determinations." State v. Warren , 304 S.W.3d 796, 801 (Mo. App. W.D. 2010).
In 2007, Defendant pleaded guilty to violating an order of protection. Scott County Associate Circuit Judge Scott Horman ("Judge Horman") accepted Defendant's guilty plea and placed him on probation.
Years later, Defendant was working in Tennessee when his daughter contacted him about legal trouble she had in Scott County. When Defendant asked her which judge was assigned to her case, she told him that it was Judge Horman. Defendant told his daughter that he would contact Judge Horman and tell him that he had a conflict of interest in handling the case. Defendant said he thought Judge Horman might "do something radical to [his] daughter" because of Defendant's 2007 order of protection.
On August 12, 2015, Defendant sent the following fax to Judge Horman:
JUDGE HORMAN: I AM SURE YOU REMEMBER ME FROM 2007 WHEN I TOLD YOU RACISM WOULD NOT BE TOLERATED! WELL I GOT A SET OF WINGS BUDDY WHICH IS THE REASON I DIDN'T ... HAVE TO DO THE YEAR YOU SENTENCED ME TO FOR A BOGUS EX-PARTE! I ALREADY DISQUALIFIED THE 33RD JUDICIAL CIRCUIT BASED ON YOUR KU KLUX KLAN TIES MY DAUGHTER MICHEAL LYNAE BELL IS SCHEDULED TO APPEAR BEFORE YOU ON THE 14TH DO US BOTH A FAVOR RECUSE YOURSELF BECAUSE THIS MIGHT GET UGLY FOR YOU ... BESIDES IT'S ... A CONFLICT OF INTEREST!
SINCERELY,
Special Agent [Defendant's name] (DOJ)
Defendant sent another fax to Judge Horman six days later. This one said:
YOU HAVE LINARD THOMAS "BELL" IN CUSTODY FOR WHAT I DON'T ... KNOW HIS WIFE SAID THE CASE WAS SUPPOSED TO BE THROWN OUT, BUT SEEING THAT YOU AND THE REST OF THE 33RD HAVE CONSPIRED AGAINST MY ENTIRE FAMILY IT WOULD BE IN YOUR BEST INTEREST TO RELEASE HIM IMMEDIATELY O[R] FACE DIRE CONSEQUENCES!
SINCERELY,
SPECIALAGENT [sic ]
[Defendant's name]
Upon receiving the second fax, Judge Horman reported it to Missouri Highway Patrol Trooper Jeremy Weadon ("the trooper") and armed himself with a handgun.
On August 19, 2015, the State charged Defendant in Scott County Circuit Court, as a persistent offender, with two counts (one for each fax) of tampering with a judicial officer. After waiving his right to counsel, Defendant represented himself at trial. While he did not testify, Defendant presented an opening statement and closing argument to the jury. During his opening statement, Defendant told the jury that he believed he had "a conflict with [Judge] Horman" because Defendant had been "falsely arrested" on the ex parte order of protection.
The State submitted each count using alternative verdict directors that allowed the jury to find Defendant guilty of tampering with a judicial officer if he threatened Judge Horman with a purpose either to influence or intimidate him.
During its deliberations, the jury sent the following note to the trial court:
*601 The jury is 11-1 on whether or not to find the defendant guilty by intimidation rather than influence. We are unanimous as to a guilty verdict. Does the jury have to be unanimous on the 4th instruction on #5 or #6?
The trial court gathered the parties and the following colloquy ensued:
THE COURT: Okay, we're on the record. The jury has sent out a question. And, I don't really think it would be appropriate to read everything that they put in there, because, they talk about their votes and which way they're going. They do have a question that relates to, it appears to be, I believe, element No. 5. Element No. 4, which I believe, if I'm not mistaken is the issue of intimidation versus influence. And the question is does the jury have to be unanimous on the fourth instruction on five or six. And, that would be as to Count [1].
[The State]: Count [1].
THE COURT: Whether they have to be unanimous. Think I'm still compelled to give the same response, you are to be guided in your deliberations by the instructions provided by the Court and the evidence as you remember.
Any objection to that response by the State?
[The State]: No, sir.
[Defendant]: No, sir.
THE COURT: Thank you, sir.
Mr. Bailiff, please return my instructions to the jury. And I'll keep the instruction, or the question, and, it will be part of the record. I just don't want to-
[Defendant]: Right, I understand.
THE COURT: -talk about the other, what they put in, some of the information that they put in there until later, but it will be available for you later.
The jury found Defendant guilty of each count of tampering with a judicial officer by threatening Judge Horman with the purpose to intimidate him. This appeal timely followed.
Analysis
Point 1-Sufficiency of the Evidence
Point 1 claims the trial court erred in entering judgment and sentence against Defendant on two counts of tampering with a judicial officer because there was insufficient evidence to prove Defendant guilty beyond a reasonable doubt as "the only circumstantial evidence of [Defendant]'s intent sending [sic] the two August, 2015 faxes was both Judge Horman's and [the trooper's] personal, subjective perception that they were threatening[.]"
"In reviewing the sufficiency of evidence, we determine whether there is enough evidence from which a reasonable trier of fact might have found the defendant guilty beyond a reasonable doubt." State v. McGirk , 999 S.W.2d 298, 299-300 (Mo. App. W.D. 1999). In making this determination, we examine the elements of the crime and consider each in turn, review the evidence in the light most favorable to the judgment (disregarding any contrary evidence), and grant the State all reasonable inferences that may be drawn from the evidence. State v. Whalen , 49 S.W.3d 181, 184 (Mo. banc 2001). We defer to the jury all assessments of witness credibility and the weight and value of their testimony. State v. Nichols , 20 S.W.3d 594, 597 (Mo. App. S.D. 2000).
Section 575.095 states, in pertinent part:
1. A person commits the offense of tampering with a judicial officer if, with the purpose to harass, intimidate or influence a judicial officer in *602 the performance of such officer's official duties, such person:
(1) Threatens or causes harm to such judicial officer or members of such judicial officer's family[.[2] ]
Defendant's argument is that there was insufficient evidence that Defendant had a purpose to intimidate Judge Horman when he sent the two faxes. Specifically, he claims that "the plain meaning of the words contained in either of the August, 2015 faxes alone cannot permit a finding that they were threats[3] sent with a very specific intent to intimidate Judge Horman."
"A person 'acts purposely' , or with purpose, with respect to his or her conduct or to a result thereof when it is his or her conscious object to engage in that conduct or to cause that result." Section 562.016.2. "Intent is rarely susceptible to proof by direct evidence and is most often inferred circumstantially." State v. Lammers , 479 S.W.3d 624, 633 (Mo. banc 2016). The first fax was sent in the context of directing Judge Horman to recuse from Defendant's daughter's case or else, "this might get ugly for you[.]" The fax accused Judge Horman of sentencing Defendant to one year in jail on a "bogus ex-parte" and having ties to the Ku Klux Klan. Defendant's second fax, sent just six days later, informed Judge Horman that he had Defendant's cousin in custody but "the case was supposed to be thrown out[.]" It accused Judge Horman of conspiring against Defendant's entire family and told Judge Horman to "release [Defendant's cousin] immediately o[r] face dire consequences[.]"
Although Defendant claimed his intention was only to protect his family through legal means, not to intimidate Judge Horman or pose a danger to his life, that intent was a question of fact to be determined by the jury. See State v. Jindra , 504 S.W.3d 187, 190 (Mo. App. W.D. 2016). Defendant's point on appeal complains about testimony from Judge Horman and the trooper regarding their subjective interpretations of the faxes that he references in his point, but Defendant made no objection when that testimony was elicited at trial. Even if we were to disregard that testimony, the jury could determine that Defendant's purpose and intent was to intimidate Judge Horman solely from the language he used in the faxes. "Under our standard of review, we assume that the jury interpreted [Defendant]'s remarks in a manner consistent with its verdict, i.e., the jury found that [Defendant]'s remarks constituted a threat" intended to intimidate Judge Horman. Id. at 191.
Further, Defendant told the jury that he believed he was falsely arrested on the order of protection and that he had a conflict with Judge Horman. The jury was also entitled to consider these admissions by Defendant in determining his intent. State v. Howell , 454 S.W.3d 386, 388 (Mo. App. E.D. 2015) (when a defendant makes a voluntary judicial admission in opening statement and closing argument, it serves as a substitute for evidence and dispenses with proof of the actual fact).
Finally, Defendant argues that there was no immediacy to his threats because he was in Tennessee when they were made. Neither immediacy nor location are elements of the crime of tampering with a judicial officer.
*603 Viewing the evidence and the reasonable inferences therefrom in the light most favorable to the verdict, the jury had sufficient evidence to support its determination that Defendant's purpose-his "conscious object"-in sending the faxes was to intimidate Judge Horman. Point 1 is denied.
Point 2-Alleging Plain Error in Handling of Jury Note
Defendant's second point claims the trial court committed plain error in failing to disclose to Defendant the entirety of the jury's question because it was "patently unfair" to deprive Defendant of its full content prior to asking whether he had any objection to the trial court's proposed response, and that deprivation denied Defendant an opportunity to request other relief, including a mistrial.
Review for plain error is discretionary. State v. Black , 524 S.W.3d 594, 600 (Mo. App. S.D. 2017). Plain error is error that is evident, obvious, and clear and affects a defendant's substantial rights. State v. Williams , 405 S.W.3d 592, 600 (Mo. App. S.D. 2013). Here, Defendant was aware that the trial court did not read the entire content of the note. Defendant did not object to the omission, and he affirmatively approved the trial court's intended response to the note.
Defendant argues that "[i]n explicitly withholding crucial details of the jury's question, the trial court denied [Defendant] a full and fair opportunity to object to its response, request alternative relief, or otherwise make a record." Defendant does not explain why the jury's vote total was a "crucial detail" for him, and he does not identify any relief (other than the drastic remedy of a mistrial) that he would have either requested or been entitled to receive. Having failed to cite any authority supporting his claim that the alleged error was evident, obvious, and clear, we decline plain error review.
The judgment of conviction and sentence is affirmed.
NANCY STEFFEN RAHMEYER, J.-CONCURS
GARY W. LYNCH, J.-CONCURS

All statutory citations are to RSMo 2000, as updated through the 2014 Cumulative Supplement.

This statute was numbered as section 565.084 at the time of Defendant's charged conduct. Effective January 1, 2017, it was renumbered section 575.095.

Defendant does not argue that his words did not constitute threats. He argues only that the threats were not intended to intimidate Judge Horman.