In the
 Missouri Court of Appeals
 Western District
STATE OF MISSOURI, )
 )
 Respondent, ) WD83494
 )
v. ) OPINION FILED: March 2, 2021
 )
RICHARD McNABB, )
 )
 Appellant. )

 Appeal from the Circuit Court of Vernon County, Missouri
 The Honorable David R. Munton, Judge

 Before Division Three: Edward R. Ardini, Jr., Presiding Judge, Alok Ahuja, Judge and
 Gary D. Witt, Judge

 Richard McNabb ("McNabb") appeals the judgment of the Circuit Court of

Vernon County, Missouri ("trial court") finding him guilty, after a jury trial, of one count

of tampering with a judicial officer pursuant to section 575.095.1 On appeal, McNabb

challenges the sufficiency of the evidence to support his conviction. We affirm the

judgment of the trial court.

 1
 All statutory references are to Revised Statutes of Missouri (2016) as updated, unless otherwise specified.
 Factual and Procedural Background

 We review the facts in the light most favorable to the jury's verdict. State v. Hunt,

451 S.W.3d 251, 257 (Mo. banc 2014). On January 3, 2017, McNabb was living with his

mother and his step-father ("Step-father"). McNabb's half-sister Meladie ("Meladie"), his

girlfriend, and his two children also lived in the home. McNabb had a third child, who

previously passed away. The prosecuting attorney, Richard Shields ("Shields"), brought

charges against McNabb in relation to his third child's death, which were still pending

during the relevant timeframe. On the evening of January 3, 2017, when Step-father

returned home for the evening, McNabb was upset about Shields and was complaining

about him to Step-father. McNabb stormed out of the house.

 After McNabb left the house, Meladie came out of her room and asked Step-father

where McNabb was. McNabb had told her earlier in the day that he loved her, which

struck her as odd at the time, because the two were not close. Step-father did not know

where McNabb had gone.

 Shortly thereafter, Meladie received a call from her sister Nicole, who lived in

Pennsylvania. McNabb had called Nicole and told her that he was going to kill Shields

and then kill himself. This worried Nicole, and she asked Meladie to call 911 from her

phone because when she tried to dial it from Pennsylvania, it went to the wrong law

enforcement agency. Meladie was worried that McNabb was in trouble and might hurt

himself, so she called 911.

 While Meladie was on the phone with 911, McNabb called Step-father. McNabb

told Step-father that he was going to kill Shields, and Step-father told McNabb that

 2
"would be the dumbest thing he could ever do." McNabb told Step-father that he had

taken Step-father's rifle from the home, and Step-father confirmed that the gun was

missing. Step-father noticed, however, that McNabb had failed to take the ammunition or

the ammunition magazine for the rifle. McNabb told Step-father that he was going to

Google Shields's address to find out where he lived. As Step-father spoke with McNabb,

Meladie relayed the information to the 911 operator. The 911 operator told Meladie to

call back if she heard anything else from McNabb. Police were dispatched to Shields's

home and to McNabb's home.

 McNabb's girlfriend was in the house and heard the 911 call and called McNabb to

inform him that Meladie had called the police. McNabb returned home shortly thereafter

and was angry. It was less than an hour from the time McNabb first left the house until

he returned. When he returned, Meladie went into her room, closed the door, and hid in

the closet. McNabb and Step-father argued. McNabb threatened to kill Step-father and

Meladie, and Step-father hit McNabb, who returned the blow. Meladie called 911 again

and told them that McNabb had returned home and he and Step-father were in a fight. It

was just over eleven minutes between the end of Meladie's first 911 call and the 911 call

where she reported McNabb had returned home. The 911 operator asked whether

McNabb still had the rifle, and Meladie answered that McNabb said he had left it on his

ex-girlfriend's back porch. The ex-girlfriend lived near Shields, and the ex-girlfriend's

mother had not known that McNabb had been to her house, but she found the rifle on the

porch when police informed her where McNabb said he had left it. She turned the gun

over to police when they arrived; the gun was unloaded.

 3
 McNabb saw and heard police arrive at his home, and walked out of the garage.

When police asked to speak with him, he responded, "F--- you, you m----- f------," before

going back into the house and locking the door. McNabb went into his bedroom and

locked the door to that room and exited through a window. He ran to a neighbor's house.

The neighbor called Meladie, and Meladie told police where to find McNabb. Police

apprehended McNabb at the neighbor's house and placed him under arrest. While all of

this was taking place, additional officers had responded to Shield's home and were in the

process of having he and his family pack belongings to evacuate their home when they

were notified that McNabb was in custody.

 McNabb was charged with attempted murder and tampering with a judicial officer.

The case was tried to a jury, and the jury found McNabb guilty of tampering with a

judicial officer but was unable to reach a unanimous verdict on the charge of attempted

murder. McNabb was sentenced to ten years in the Missouri Department of Corrections

for tampering with a judicial officer. The State subsequently dismissed the charge of

attempted murder. This appeal follows.

 Standard of Review

 When an appellant challenges the sufficiency of the evidence to support his

conviction, we review the evidence in the light most favorable to the jury's verdict, giving

the State the benefit of all reasonable inferences. State v. Thompson, 314 S.W.3d 407,

410 (Mo. App. W.D. 2010). We do not reweigh the evidence but determine only whether

there is sufficient evidence from which a reasonable juror might have found the

defendant guilty beyond a reasonable doubt. Id. We "may not supply missing evidence

 4
or give the State the benefit of unreasonable, speculative, or forced inferences." State v.

Hunt, 451 S.W.3d 251, 257 (Mo. banc 2014).

 Analysis

 McNabb's challenge to the sufficiency of the evidence to support his conviction is

his only point on appeal. As relevant to this appeal, section 575.095.1(1) 2 declares that

"[a] person commits the offense of tampering with a judicial officer if, with the purpose

to harass, intimidate or influence a judicial officer in the performance of such officer's

official duties, such person [t]hreatens or causes harm to such judicial officer . . . ." The

parties agree that Shields is a judicial officer as defined by the statute. However,

McNabb argues that the evidence failed to establish that he threatened or harmed Shields

with the purpose to harass, intimidate, or influence Shields. We disagree.

 Because Shields was not harmed, the State had to show that McNabb threatened

Shields with the purpose to harass, intimidate, or influence him. To show that McNabb

acted "with the purpose" of harassing, intimidating or influencing Shields's actions, the

State had to show that it was McNabb's "conscious object . . . to cause" such harassment,

intimidation or influence. § 562.016.2, RSMo. Showing that McNabb acted with such a

purpose is equivalent to showing that he acted with "specific intent." Bryant v. State, 316

 2
 Paragraph "Second" of the verdict director submitted to the jury for the offense of tampering with a
judicial officer required the jury to find that McNabb committed three separate acts; it asked the jury to find that he:
"[1] threatened to kill Richard Shields, [2] secured a rifle, and [3] transported the rifle to a location near Richard
Shields'[s] home." The second and third acts do not appear necessary to a determination of whether McNabb
"threaten[ed] . . . [a] judicial officer" within the meaning of section 575.095.1(1). Instead, McNabb's acts of
securing and transporting the rifle arguably implicate section 575.095.1(4), which proscribes "engag[ing] in conduct
reasonably calculated to harass or alarm such judicial officer . . ., including stalking pursuant to section 565.225 or
565.227." The verdict directing instruction on this charge did not, however, ask the jury to find that McNabb's
actions were "reasonably calculated to harass or alarm" Shields, which is an essential element for an offense under
subsection (4).

 5
S.W.3d 503, 509 (Mo. App. E.D. 2010) (citing State v. Whalen, 49 S.W.3d 181, 186–87

(Mo. banc 2001)). The fact that a defendant knows that his actions could or would cause

a particular result "is not the requisite mental state of acting purposely." State v. Keeler,

856 S.W.2d 928, 931 (Mo. App. S.D. 1993). Instead, the State must show that the

defendant desired to produce a particular outcome.

 Because McNabb had no contact or communication with Shields regarding his

plan to kill first Shields and then himself, the State's evidence would need to support a

finding that McNabb intended to harass or intimidate Shields by telling his own family

that he was going to kill Shields and then himself. See State v. Jindra, 504 S.W.3d 187,

190 (Mo. App. W.D. 2016).

 A person can violate section 575.095.1(1) by relaying threats against a judicial

officer to a third party. See Jindra, 504 S.W.3d at 190, State v. Hamilton, 130 S.W.3d

718, 719 (Mo. App. S.D. 2004). In Hamilton, threats intended to intimidate a judicial

officer (a probation officer) were made in the presence of the judicial officer and later

outside her presence to the judicial officer's supervisor and to law enforcement personnel,

for whom it "would, arguably, have been [a] dereliction of duty" not to relay the

information to the judicial officer so that she could take steps to protect herself.

Hamilton, 130 S.W.3d at 720. In Jindra, the defendant violated the statute by relaying

threats against a judge through a court clerk and through people who worked with the

judge's husband.3 Jindra, 504 S.W.3d at 191. Jindra understood and intended that the

 3
 The defendant in Jindra was not charged under section 575.095.1(1) but was instead convicted of
violating section 575.095.1(4).

 6
threats would be communicated to the judge, and they were intended to intimidate or

harass her. The Jindra opinion compared section 575.095 to the federal bank robbery

statute, 18 U.S.C. § 2113(a), which prohibits taking "by intimidation." Id. The opinion

noted that "by intimidation" had been interpreted as conduct "reasonably calculated to

produce fear." Id. In both Hamilton and Jindra it was a reasonable inference from the

evidence that the defendant was aware the threats made would be relayed to the judicial

officer and it was the defendant's intent that the threats be relayed to accomplish the goal

of intimidation or harassment of the judicial officer.

 [The statute] does not restrict certain "speech" because of its message or
 content. Instead, it enjoins certain speech because of the impact it is
 intended to have on the person to whom it is directed. Under the statute, a
 defendant must engage in conduct reasonably calculated to harass or alarm
 a judicial officer, and the defendant must do so with the purpose to harass,
 intimidate or influence a judicial officer in a judicial proceeding.

State v. McGirk, 999 S.W.2d 298, 302 (Mo. App. W.D. 1999).

 In the present case, McNabb never threatened Shields directly. He communicated

his intent to harm Shields and then himself to his sister, who lived in Pennsylvania, but

subsequently also to Step-father, with whom he lived. McNabb notably called Step-

father, with whom he had just recently spoken at home, to tell him that he was going to

kill Shields. He specifically informed Step-father that he had taken his rifle and that he

was going to Google Shields's home address, even though there is no evidence that he

actually did so. The evidence was that while McNabb was on the phone with Step-father,

Meladie was on the phone in the same room relaying the information to authorities on the

911 call. A jury could reasonably have found that McNabb intended for Step-father to

 7
relay the threat to police, who would reasonably have notified Shields, with McNabb

having the purpose that Shields would feel intimidated or harassed. While the jury could

also have found that McNabb did not intend that either his sister or Step-father would

relay his threats, this court

 accepts as true all of the evidence favorable to the state, including all
 favorable inferences drawn from the evidence and disregards all evidence
 and inferences to the contrary. . . . In reviewing a challenge to the
 sufficiency of the evidence, appellate review is limited to a determination
 of whether there is sufficient evidence from which a reasonable juror might
 have found the defendant guilty beyond a reasonable doubt.

State v. Grim, 854 S.W.2d 403, 405 (Mo. banc 1993) (emphasis added). While the initial

call to McNabb's sister in Pennsylvania, may not have been sufficient for a factfinder to

determine that McNabb's intent was to have his threats communicated to law

enforcement and subsequently to Shields, his repeated calls to family members stating his

threats against Shields could be interpreted, by a fact finder, to have no other purpose

than to ensure the threats were delivered to the victim. The evidence did establish that

the threats were in fact communicated to Shields and the prosecutor and his family were

evacuating their home due to concerns for their safety in response to the threats. We find

that a reasonable juror could have concluded that McNabb's purpose in making the

repeated threats against Shields was to cause the threats to be ultimately communicated to

Shields and for him to be intimidated, harassed, or influenced.

 8
 Conclusion

 For all of the above-stated reasons, we affirm the judgment of the trial court.

 __________________________________
 Gary D. Witt, Judge

Ardini, Presiding Judge, joins in the majority
Ahuja, Judge, dissents in separate opinion

 9
 IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
STATE OF MISSOURI, )
 Respondent, )
 )
v. ) WD83494
 )
RICHARD McNABB, ) FILED: March 2, 2021
 Appellant. )
 DISSENTING OPINION
 I respectfully dissent. Because I believe the evidence was insufficient to

prove beyond a reasonable doubt that McNabb acted with the purpose of harassing,

intimidating, or influencing prosecutor Richard Shields, I would reverse McNabb’s

conviction for tampering with a judicial officer.

 To sustain McNabb’s conviction, the State was required to prove that he

threatened prosecutor Richard Shields “with the purpose to harass, intimidate or

influence” Shields in the performance of his official duties. § 575.095.1(1) (emphasis

added).1

 A requirement that a defendant acted “with purpose” or “purposely” “is the

highest culpable mental state prescribed by law.” State v. Williams, 700 S.W.2d

541, 544 (Mo. App. S.D. 1985). To show that McNabb acted with the requisite

purpose, the State had to present evidence from which the jury could find, beyond a

reasonable doubt, that it was McNabb’s “conscious object to . . . cause” such

harassment, intimidation, or influence. § 562.016. As the majority recognizes,

 1
 Unless otherwise indicated, statutory citations refer to the 2016 edition of the Revised Statutes of
Missouri.
requiring that a defendant act with a particular purpose is equivalent to a showing

that the defendant had “specific intent.” Bryant v. State, 316 S.W.3d 503, 509 (Mo.

App. E.D. 2010) (citing State v. Whalen, 49 S.W.3d 181, 186–87 (Mo. 2001)). A

defendant must affirmatively desire that his actions produce a particular result; it

is not enough that the defendant was aware that his actions could, or would, cause

a particular outcome. State v. Keeler, 856 S.W.2d 928, 931 (Mo. App. S.D. 1993).

 Section 575.095.1 “enjoins certain speech because of the impact it is intended

to have on the person to whom it is directed.” State v. McGirk, 999 S.W.2d 298, 302

(Mo. App. W.D. 1999). Therefore, to show that McNabb acted with the purpose to

intimidate or influence Shields, the State had to prove, at a minimum, that McNabb

“directed” his speech at Shields. In other words, the State had to prove that

McNabb intended – and wanted – his threats to be communicated to Shields.

 There was no basis in the evidence for the jury to find beyond a reasonable

doubt that McNabb intended to communicate with Shields, either directly or

indirectly through third parties. McNabb told a sister living in Pennsylvania, his

step-father, and his girlfriend that he intended to kill Shields and then to kill

himself. I fail to see how McNabb’s communications with his family members, and

with his girlfriend, support the inference that McNabb acted with the purpose of
communicating with Shields. I recognize that communications with third parties

may be sufficient to support a conviction for tampering with a judicial officer. See

State v. Jindra, 504 S.W.3d 187, 190-91 (Mo. App. W.D. 2016); State v. Hamilton,

130 S.W.3d 718, 719-20 (Mo. App. S.D. 2004). But in those cases, the defendant

communicated with the judicial officer’s family members or co-workers, or with law

enforcement officers who were duty-bound to inform the judicial officer of the

defendant’s threats. Thus, in both Hamilton and Jindra, the evidence supported a

reasonable inference that the defendant expected and intended that his threats
would be relayed to the judicial officer. In this case, by contrast, the people with
 2
whom McNabb communicated (his girlfriend and family members) had no

relationship to prosecutor Shields, and were under no professional obligation to

inform him of McNabb’s threats.

 McNabb’s conviction cannot be sustained on the basis that, while he was

speaking to his step-father, his sister Meladie was on the phone with a 9-1-1

dispatcher, relaying some of what McNabb was saying. The recording of Meladie’s

9-1-1 call makes clear that McNabb had told his step-father his intentions before

Meladie ever called 9-1-1. Moreover, there is no indication from the recording that

McNabb was aware that Meladie was, or would be, speaking with law enforcement

when he made any of his threatening statements. Notably, Meladie testified that

McNabb became angry when he later learned that she had called 9-1-1. Far from

showing that McNabb acted with the purpose of communicating with Shields, this

indicates that he intended his threatening statements to go no further than his

family.

 As the majority recognizes, while we give the State the benefit of every

reasonable inference from the evidence, we “may not supply missing evidence or

give the State the benefit of unreasonable, speculative, or forced inferences.” State

v. Hunt, 451 S.W.3d 251, 257 (Mo. 2014). A finding that McNabb acted with the
purpose of communicating threats to Shields, in order to harass or intimidate

Shields or to influence his conduct, goes beyond permissible inferences supported by

the evidence, into the realm of pure speculation. As the Eastern District has

recently explained,

 An “inference” is different from a “supposition,” a supposition being a
 conjecture based on the possibility that a thing could have happened.
 It is an idea or a notion founded on the probability that a thing may
 have occurred, but without proof that it did occur. A criminal
 conviction cannot be based upon probabilities and speculation.

 3
State v. Kinsella, 578 S.W.3d 802, 815 (Mo. App. E.D. 2019) (citations and internal

quotation marks omitted).

 State v. Keeler, 856 S.W.2d 928 (Mo. App. S.D. 1993), illustrates the fatal gap

in the State’s evidence in this case. In Keeler, a nine-year-old girl missed her school

bus, and began walking to her school. Id. at 929. As she was doing so, the

defendant drove by in his car. After passing the girl, the defendant “made a U-turn,

pulled his car alongside her, and stopped”; he then “opened the passenger door,

pointed to the passenger seat, and told her to get into the car.” Id. The victim

refused, and alerted authorities. Id. The defendant was convicted of attempted

kidnapping. The offense required that the defendant have attempted to remove or

confine the victim for certain specific purposes, such as to facilitate commission of a

felony, inflict physical injury, or terrorize the victim. § 565.110.1, RSMo 1986.

 The Southern District reversed the defendant’s conviction. The Court

acknowledged that the evidence was sufficient to establish that the defendant

intended to confine or remove the victim. Id. at 930. But the Court found that the

evidence was insufficient to establish the purpose for which he acted.

 The state insists at oral argument that the defendant's purpose
 is “inferable” from his actions in attempting to get [the victim] into his
 car and from “a certain interest in little girls” as indicated by his
 waving “real big” to “other little girls” as he drove through Carthage.
 The question remains: For what purpose?
 Based on the record before us, to say that the defendant's
 purpose in getting [the victim] into his car was to commit a felony, to
 inflict physical injury on her, or to terrorize her or another is nothing
 but sheer speculation. While it might be argued that the defendant, an
 adult unknown to [the victim], knew that a nine-year-old child's
 response, had she entered the defendant's vehicle, would have been
 one of terror, such knowledge, as defined in § 562.016.3, is not the
 requisite mental state of acting purposely, as defined in § 562.016.2.
 While it is true that a defendant's purpose rarely is susceptible
 of direct proof, here there is no evidence from which a jury reasonably
 could infer the defendant's purpose.

 4
856 S.W.2d at 931 (citation omitted).

 The same is true here. The evidence establishes that McNabb was in an

agitated state, and called multiple members of his family, and his girlfriend, to

express what he was feeling and what he intended to do. But it is “nothing but

sheer speculation” to suggest that McNabb acted with the purpose of influencing or

causing alarm to prosecutor Shields when he reached out to his family at a time of

deep emotional turmoil. Without some evidence that McNabb wanted his threats to

be communicated to Shields, or even that he was aware that his statements were

being relayed to law enforcement, there was no basis for the jury to find that he

acted “with the purpose to harass, intimidate or influence” Shields. § 575.095.1(1).

 “[I]t is the obligation of the State to prove a criminal case beyond a

reasonable doubt. It is not the function of the court to ignore its failure." State v.

Hatfield, 351 S.W.3d 774, 782 (Mo. App. W.D. 2011) (citations and internal

quotation marks omitted). Because the State failed to prove that McNabb acted

with the purpose to harass, intimidate, or influence a judicial officer, his conviction

for tampering with a judicial officer must be reversed.

 Alok Ahuja, Judge

 5