

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI,                    )
                                      )
    Plaintiff-Respondent,            )
                                      )
v.                                    )    No. SD37585
                                      )    Filed: **September 6, 2023**
CHRISTOPHER B. SHULTZ,                )
                                      )
    Defendant-Appellant.             )

### APPEAL FROM THE CIRCUIT COURT OF SCOTT COUNTY

Honorable David A. Dolan, Circuit Judge

### AFFIRMED

Christopher Shultz ("Shultz") appeals the judgment of the Circuit Court of Scott County (the "trial court"), convicting him, after a jury trial, of two counts of tampering with a judicial officer under Section 575.095.[1]  Shultz raises four points on appeal:  In Points I and II, Shultz challenges the sufficiency of the evidence to support his convictions.  In Point III, Shultz asserts the trial court plainly erred in admitting evidence of prior bad acts by Shultz.  In Point IV, Shultz asserts the trial court abused its discretion in denying his oral motion for change of judge for cause.  We affirm the trial court's judgment.

---

[1] Unless otherwise noted, all statutory references are to RSMo 2016, including, as applicable, statutory changes effective January 1, 2017.  All rule references are to Missouri Court Rules (2022).

**Factual Background and Procedural History**

Beginning in 2019, Amanda Oesch ("Oesch"), the Scott County Prosecuting Attorney, represented the State on multiple unrelated charges against Shultz. As part of her representation of the State, Oesch filed criminal charges against Shultz and opposed his requests for bond reduction.

In June 2021, Shultz made two video calls from jail. At this time, Shultz had pending charges of tampering with a judicial officer related to phone calls he made from the jail allegedly concerning Oesch. All video calls from the jail contain a notice that all calls are recorded. Notice of call recording is also provided in the handbook each prisoner receives after booking. Shultz testified he knew the video calls were recorded. Oesch reviewed the video calls, which were admitted in evidence. In these calls, Shultz displayed a tattoo. The tattoo has "Amanda O" with crosshairs through the "O" and bullets under "Amanda" encircling Shultz's wrist. A monkey is tattooed on the back of Shultz's arm. In the first video call, made on June 21, 2021, Shultz showed his tattoo, which he described as a "monkey blowing its brains out . . . then it's all bullets and that name is on the bullet." He also said the "tattoo is what they are wanting to send me to prison for." In the second video call, made on June 24, 2021, Shultz said "that's what they are wanting to send me to prison for," while showing the tattoo to the caller on the other end. In the second call, Shultz also stated he "ain't never got anybody's name tatted on me before" and asked the caller on the other end if she knew what the tattoo was. When she responded "No," Shultz asked her: "Can you read? Scott City."

The State also presented evidence that "Amanda Oesch" was written on Shultz's cell wall with crosshairs through the "O," like the crosshairs through the "O" in Shultz's tattoo.

The State charged Shultz with two counts of tampering with a judicial officer under Section 575.095 related to the two video calls. On the first day of trial, Shultz orally moved for a continuance to hire private counsel. The trial court denied the motion. Shultz then orally moved for change of judge for cause, asserting Oesch regularly appeared before the judge and Shultz had a personal relationship with the judge's son. The trial court denied the motion.

The jury found Shultz guilty of both counts of tampering with a judicial officer related to the video calls (Counts III and IV). The jury found Shultz not guilty of two other counts of tampering with a judicial officer (Counts I and II), and those verdicts are not at issue on appeal. The trial court entered its judgment and sentenced Shultz to ten years' imprisonment each on Counts III and IV, with the sentences to be served consecutively. Shultz appealed.

### Points I and II – Sufficiency of the Evidence

Shultz argues the State failed to present sufficient evidence from which a reasonable juror could convict him of tampering with a judicial officer because the State failed to prove Shultz acted with the purpose to harass, intimidate or influence Oesch in that he never showed his tattoo to Oesch.[2]

### Standard of Review

"When considering the sufficiency of the evidence on appeal, this Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt." *State v. Boyd*, 659 S.W.3d 914, 925 (Mo. banc 2023) (quoting *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005)). "[G]reat deference is given to the trier of fact, and an appellate court will not weigh the evidence anew." *Id.* (quoting *State v. Alexander*, 505 S.W.3d 384, 393 (Mo.App. 2016)). "The evidence and all reasonable inferences therefrom are viewed in the light most

---

[2] Shultz makes an identical sufficiency of the evidence argument as to Counts III and IV, which involved the two separate video calls. Because our analysis is dispositive of both points, we consider Points I and II together.

favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." ***Id.*** (quoting ***Belton***, 153 S.W.3d at 309).

"We defer to the fact-finder's 'superior position to weigh and value the evidence, determine the witnesses' credibility and resolve any inconsistencies in their testimony.'" ***State v. Hilleman***, 634 S.W.3d 709, 713 (Mo.App. 2021) (quoting ***State v. Lopez-McCurdy***, 266 S.W.3d 874, 876 (Mo.App. 2008)). "Circumstantial rather than direct evidence of a fact is sufficient to support a verdict." ***Id.*** (quoting ***State v. Lehman***, 617 S.W.3d 843, 847 (Mo. banc 2021)). "If circumstantial evidence supports equally valid inferences, it is up to the fact-finder to determine which inference to believe." ***Id.***

Analysis

Section 575.095.1 sets out the required elements of the crime of tampering with a judicial officer:

> A person commits the offense of tampering with a judicial officer if, with the purpose to harass, intimidate or influence a judicial officer in the performance of such officer's official duties, such person:
>
> (1) Threatens or causes harm to such judicial officer or members of such judicial officer's family,
>
> (2) Uses force, threats, or deception against or toward such judicial officer or members of such judicial officer's family, [or]
>
>     . . . .
>
> (4) Engages in conduct reasonably calculated to harass or alarm such judicial officer . . . .

Section 575.095.2 defines "judicial officer" to include a "state prosecuting or circuit attorney." "A person 'acts purposely', or with purpose, with respect to his or her conduct or to a result thereof when it is his or her conscious object to engage in that conduct or to cause that

4

result." Section 562.016.2. "Intent is rarely susceptible to proof by direct evidence and is most often inferred circumstantially." *State v. Lammers*, 479 S.W.3d 624, 633 (Mo. banc 2016).

Shultz argues the State failed to present sufficient evidence that he acted with the purpose to harass, intimidate or influence Oesch, as he did not show his tattoo to Oesch or otherwise directly threaten her or ask that threats be conveyed to her. We disagree. Nothing in Section 575.095 required the State to prove Shultz showed the tattoo to Oesch or otherwise communicated directly with Oesch. *See State v. McNabb*, 621 S.W.3d 658, 661-62 (Mo.App. 2021); *State v. Jindra*, 504 S.W.3d 187, 190-91 (Mo.App. 2016); *State v. Hamilton*, 130 S.W.3d 718, 719 (Mo.App 2004). In *McNabb*, the defendant repeatedly made threatening calls to his family members about the prosecuting attorney who pressed charges against him in connection with the death of McNabb's third child. 621 S.W.3d at 659-60. The court held the jury reasonably could have found McNabb intended for his family members to relay the information to the police, who would have relayed the information to the prosecutor. *Id.* at 662. In *Jindra*, the defendant communicated threats against a judge to the judge's court clerk and to employees of the judge's husband. 504 S.W.3d at 191. In *Hamilton*, the defendant made threatening comments to police officers about his parole officer both in and outside the presence of the parole officer. 130 S.W.3d at 719-20. Because the defendant "logically could have expected the threats to be communicated to the parole officer in order that she could take reasonable steps to protect herself," a reasonable jury had sufficient evidence to find defendant guilty of tampering with a judicial officer. *Id.*

Here, Shultz logically could have expected his video calls would be communicated to Oesch. The State presented evidence all video calls provide notice of recording as does the prisoner handbook. Shultz testified he knew the video calls were recorded. A reasonable juror

could find Shultz knew the calls were recorded and proceeded to show his tattoo, with the purpose to harass, intimidate or influence Oesch in the performance of her official duties.

Further, the State presented evidence that Shultz had "Amanda Oesch" written on his cell wall, with the "O" in "Oesch" containing crosshairs through the "O" like the crosshairs through the "O" in Shultz's tattoo. The trial court admitted and the jury viewed photos of the writing on Shultz's cell wall and Shultz's tattoo and each video call at issue in the charges. A reasonable juror could find Shultz, in showing his "Amanda O" tattoo on two video calls, in each instance acted with the purpose to harass, intimidate or influence Oesch in the performance of her official duties even though he never showed the tattoo directly to Oesch.

Shultz testified his tattoo referred to his ex-girlfriend named "Amanda O[ ]," he denied writing "Amanda Oesch" on his cell wall, he claimed to have no issues with Oesch and said he preferred her over other prosecutors, and he said he "never threatened anybody." The jury was free to disbelieve Shultz's testimony. *State v. Hamby*, 669 S.W.3d 76, 88 n.10 (Mo. banc 2023) ("This Court has found 'the jury is free to disbelieve all or any part of the evidence.'") (quoting *State v. Pierce*, 433 S.W.3d 424, 430 (Mo. banc 2014); *State v. Jackson*, 433 S.W.3d 390, 404-06 (Mo. banc 2014)). We "disregard any potentially innocent explanation of the evidence and instead view it in the light most favorable to the verdict." *State v. Mosby*, 341 S.W.3d 154, 156 (Mo.App. 2011).

The State presented sufficient evidence from which a reasonable juror could find beyond a reasonable doubt that Shultz, by his conduct in each video call, acted with the purpose to harass, intimidate or influence Oesch in the performance of her official duties. Points I and II are denied.

6

**Point III - Prior Bad Acts**

In Point III, Shultz alleges the trial court plainly erred by failing to *sua sponte* declare a mistrial based on evidence of Shultz's prior bad acts involving drugs, assault, and gang affiliation.

Standard of Review

"Generally, this Court does not review unpreserved claims of error." ***State v. Brandolese***, 601 S.W.3d 519, 525 (Mo. banc 2020). Rule 30.20 allows "plain errors affecting substantial rights [to] be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." "The plain error rule is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review." ***Brandolese***, 601 S.W.3d at 526 (quoting ***State v. Jones***, 427 S.W.3d 191, 195 (Mo. banc 2014)). "Plain error review is discretionary, and this Court will not review a claim for plain error unless the claimed error 'facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted.'" ***Id.*** (quoting ***State v. Clay***, 533 S.W.3d 710, 714 (Mo. banc 2017)).

Analysis

Shultz has not established manifest injustice or a miscarriage of justice. Shultz argues only that "the prejudicial impact of the evidence clearly outweighed any possible relevance," and "[a] manifest injustice has occurred." We decline to grant discretionary plain error review under these circumstances. *See* ***id.*** (declining to review a claim of plain error where "there is no evidence or allegation beyond the alleged unpreserved error itself that [defendant] suffered an unfair or unjust trial"). Point III is denied.

7

**Point IV - Change of Judge**

In Point IV, Shultz alleges the trial court abused its discretion in denying his oral motion for change of judge for cause. On the first day of trial, Shultz made an oral motion for continuance, claiming he wanted to replace his public defender with private counsel. The trial court denied the motion. Shultz then moved for a change of judge for cause, citing the judge's familiarity with the victim and Shultz's personal relationship with the judge's son.

Standard of Review

"We review a trial court's denial of a motion for change of judge for an abuse of discretion." *State v. Howell*, 626 S.W.3d 758, 768 (Mo.App. 2021) (citing *State v. White*, 462 S.W.3d 915, 917 (Mo.App. 2015)). "The [trial] court abuses its discretion when the ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful, deliberate consideration." *State v. Teter*, 665 S.W.3d 306, 318 (Mo. banc 2023) (quoting *Macke v. Patton*, 591 S.W.3d 865, 868 (Mo. banc 2019)).

Analysis

Shultz claims he had the right to a change of judge for cause because "the alleged victim was the prosecutor who appeared before the judge daily, and [Shultz] had a personal relationship with the judge's son, causing the judge to be biased against [Shultz]." Shultz had no right to a change of judge as of right under Rule 32.07 because his motion was not in writing or filed within ten days after entry of the initial plea.

Even though Shultz had no right to a change of judge as of right, Shultz argues the trial court abused its discretion in denying his oral motion for change of judge for cause. Rule 2-2.11(A) provides in relevant part:

(A) A judge shall recuse himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

(1) The judge has a personal bias or prejudice concerning a party or party's lawyer or knowledge of facts that are in dispute in the proceeding that would preclude the judge from being fair and impartial.

*See also* Rule 32.09(c) ("However, nothing contained in Rules 32.01 through 32.09, inclusive, shall prohibit a judge from ordering a change of venue or change of judge when fundamental fairness so requires or pursuant to Rule 32.10."); Rule 32.10 ("If the judge is related to any defendant or has an interest in or has been counsel in the criminal proceedings or disqualifies for any other reason, the judge promptly shall transfer the case to the presiding judge of the circuit for reassignment in accordance with the procedures of Rule 32.07(d).").

"It is presumed that a judge acts with honesty and integrity and will not undertake to preside in a trial in which the judge cannot be impartial." *McFadden v. State*, 553 S.W.3d 289, 302 (Mo. banc 2018) (quoting *Smulls v. State*, 10 S.W.3d 497, 499 (Mo. banc 2000)). "'This presumption can be overcome and disqualification is required if a reasonable person would find an appearance of impropriety and doubt the impartiality of the court,' but there 'must be a factual context that gives meaning to the kind of bias that requires disqualification of a judge.'" *Id.* Shultz has not provided factual context showing an abuse of discretion. Shultz made a last-minute request for a change of judge for cause after denial of his motion for continuance, citing facts that would have been long known by Shultz. Even setting aside the last-minute nature of Shultz's request, the trial court did not abuse its discretion in denying the motion. An allegation that an alleged victim often appeared in front of the judge does not require recusal. *See State v. Thomas*, 423 S.W.3d 301, 303-04 (Mo.App. 2014) (quoting *State v. Fortner*, 84 S.W.3d 507, 513 (Mo.App. 2022) ("[T]he general rule is that '[a]n acquaintanceship between a judge and a

9

victim is not a basis for requiring the judge to disqualify.'"); ***State v. Whitlow***, 988 S.W.2d 121, 123 (Mo.App. 1999) (holding a judge need not recuse when two attorneys related to the victim often appeared in front of the judge). Shultz's allegation that the judge was biased against him because of Shultz's personal relationship with the judge's son similarly fails to establish abuse of discretion because Shultz did not allege or prove the judge knew of the relationship or that the alleged relationship would bias the judge against Shultz. *See **Prince v. State***, 390 S.W.3d 225, 238 (Mo.App. 2013) (finding no abuse of discretion in denial of a motion for change of judge for cause when the movant "failed to allege what effect, if any, [the judge]'s relationship with [movant]'s grandfather . . . had on the outcome of [the proceedings]"). Point IV is denied.

**Conclusion**

The trial court's judgment is affirmed.


GINGER K. GOOCH, J. – OPINION AUTHOR

MARY W. SHEFFIELD, J. – CONCURS

BECKY J.W. BORTHWICK, J. – CONCURS

10